## BULLITT, MILLER & Co. *v.* WILLIAM WALKER.—ROBERTSON & McDOUGALL and OGLESBY & McCAULEY, Garnishees.

The true owner of goods in a factor's hands on consignment may require an account of the factor, although unknown to him. When the true owner has not presented himself to make any claims, and the factor, without having received any communication from him, and being under advances to the agent upon his drafts, passes the proceeds to the credit of the agent, by whom the goods were shipped, with instructions to that effect at the time of the shipment, he will be protected from liability to pay a second time.

When the goods, under such circumstances, were undisposed of at the time of the service of the interrogatories on the garnishees, *held:* that they are liable to seizure for the debts of the owner. *Held, also,* that in this case the owner of the goods, and defendant in the suit, was not a competent witness for the plaintiffs, but that the agent was a competent witness for the garnishees.

APPEAL from the Fourth District Court of New Orleans, *Reynolds*, J. *Henry C. Miller*, for plaintiffs and appellants. *W. W. King*, for defendant. *Benjamin, Bradford & Finney*, for *Robertson & McDougall*. *Mott & Fraser*, for *Oglesby & McCauley*.

BUCHANAN, J. This suit was commenced by attachment, the defendant being an absentee. Two commercial firms of this city, *Robertson & McDougall*

and *Oglesby & McCauley*, were made garnishees, by service of interrogatories, on the 27th April, 1854. The answer of a curator *ad hoc*, appointed to represent the defendant, filed, under instructions from him, contained in a letter, which is in evidence, admits fully the plaintiffs' claim, the correctness of which is also proved by other evidence. The judgment of the District Court was in favor of the defendant and the garnishees, upon the ground that no property of the defendant had been attached. From this judgment the plaintiffs have appealed.

The garnishees, commission merchants in New Orleans, were consignees of corn in sacks, shipped on board steamboats at Evansville, Indiana, by *John S. Mitchell*, for account of *William Walker*. Plaintiffs contend that the consignments of corn, or their proceeds, in the hands of the garnishees, belong to the defendant, and are liable to their attachment.

The garnishees, *Robertson & McDougall*, in their answers, which are uncontradicted, aver that they received two shipments, per steamers Empress and James Robb, with directions from the shipper, *Mitchell*, to place the proceeds to the credit of *Mitchell* in account; that they sold both shipments of corn, and placed the net proceeds to the credit of *Mitchell*, as directed, on the 2d and 22d April, 1854, respectively.

They say: "Before the collection of the money for sales of this corn, we were under advance upon the drafts of *John S. Mitchell* for more than it yielded by about $100, which he still owes. We were under advance for the whole amount of these sales before the service of attachment."

An account current with *Mitchell*, annexed to the answers of these garnishees, corresponds with their statements, showing a balance in favor of *Robertson & McDougall*, on the 24th April, (after crediting *Mitchell* with the net proceeds of both shipments of corn) of $98 12.

A letter of advice accompanied the first shipment, in these words:

"I ship to you to-day, per Empress, a lot of corn, 700 sacks, marked A. & B., which please sell for the best price you can, and credit my account with proceeds. Make account of sales for account of *William Walker*.

"Yours, very respectfully,

"JOHN S. MITCHELL."

The counsel for plaintiffs contend that these instructions gave no authority to the consignee to apply the proceeds of the corn in the manner directed. That the corn was defendant's property, and that the bills of lading (in evidence), and the letter of advice itself, gave *Robertson & McDougall* notice of this fact. That an agent, as *Mitchell* was, has no right to pay his own debts with the property of his principal. Consequently, that the payment of the proceeds to any one but *Walker* was a payment in consignee's own wrong.

The evidence certainly shows that the corn belonged to *Walker*, having been purchased for him by *Mitchell*, and partially paid for by funds of *Walker* in *Mitchell's* hands. But it is also proved that *Mitchell* was in advance to *Walker* on account of the price of the corn.

The mention of *Walker's* name in the bills of lading, and in the letter of advice, must also be taken to have conveyed to *Robertson & McDougall* intelligence that *William Walker* had an interest in the corn. But *Robertson & McDougall* had no mission to protect *Walker* from a misappropriation of his funds by his agent, *Mitchell*. The true owner of goods in a factor's hands on consignment may require an account of the factor, although unknown to him.

See Story on Agency, section 420, and the case of *Hays* v. *Wright*, lately decided in this court.

But *Walker* did not present himself to make any claim. The garnishees state, under oath, and are uncontradicted in the statement, that they received no communication from *Walker* in regard to those shipments. There is, to be sure, evidence of an order of *Walker* upon them, in favor of the plaintiffs, for the proceeds of the 1830 sacks of corn, per Empress and James Robb, but this order was only presented after the institution of this suit and service of the attachment.

We perceive no sufficient legal reason for requiring *Robertson & McDougall* to pay the proceeds of this corn a second time.

The other garnishees, *Oglesby & McCauley*, are in a somewhat different position. They had in their hands, undisposed of, 1352 sacks of corn, which had been shipped to them under the same circumstances, at the time of the service of the interrogatories, on the 27th April. This corn they sold, as they state, on the 29th April, and applied the proceeds to the credit of *Mitchell's* account, as directed by him. After giving this credit, *Mitchell* appears to be still indebted to them. The net proceeds of the 1352 sacks of corn was $1,235 18, for which amount *Oglesby & McCauley* are liable to plaintiffs under the garnishment, unless they have established a lien on the corn in favor of *Mitchell*, which entitled him to its proceeds in preference to the owner of the corn, *Walker*.

In entering upon this enquiry, we are met by two bills of exceptions: one taken by the garnishees to the admission of *Walker*, the defendant, as a witness for plaintiffs, the other by plaintiffs, to the admission of *John S. Mitchell*, as a witness for garnishees. The objection to both witnesses is the same, namely, interest.

The interest of *Walker* is that of party to the suit, against whom judgment is asked, and it does not seem to admit of doubt that a judgment against the garnishees is contingent upon a judgment against defendant. When the defendant is put upon the stand as a witness by the plaintiff, at first blush it would seem that he is called to testify against his own interest; but when we consider that the answer in the cause, filed with the written authorization of defendant, is an acknowledgment of plaintiffs' right to recover, it is apparent that defendant's testimony is only required for the purpose of making the garnishees liable for the payment of defendant's debt to plaintiffs, which purpose he is clearly interested to see accomplished. Neither does the so called release, which has been tendered, cure the objection, for it does not discharge defendant from the suit. It merely stipulates that plaintiffs will not seek to enforce any judgment they may obtain out of any other property of defendant than what may be decreed to be in the hands of the garnishee.

We consider *Walker's* testimony should have been rejected.

As to *Mitchell*, we cannot see any incompetency. He is not directly interested in the result of the suit, neither does the rule of indirect interest, contained in the cases collected in Hennen's Digest, verbo Evidence, page 546, at bottom, apply to him. The judgment in this case would not be evidence in a suit to be brought by *Walker* against *Mitchell* for settlement of accounts. *Res judicata* only holds where the thing demanded is the same.

Proceeding next to examine the state of the account between *Mitchell* and *Walker*, on the 27th April, 1854, the date of the service of attachment on the

garnishees, we find *Walker* charged in *Mitchell's* account current, for advances and commissions to that date (not disputed)...................... $6,969 15
Against which are credits to amount of......................... 4,562 00

Balance due *Mitchell*, April 27th, per his account................ $2,407 15
      This balance must be diminished, however, in the first place by the amount of two items which figure in *Mitchell's* account to *Walker's* credit, under date of the 29th April, but which the other evidence shows were passed to *Mitchell's* credit by the garnishees, on the 20th and the 22d of April—$982 33 + $1,004 49 =.......... 1,986 82

Reducing it to............................................ $420 33
      And, in the second place, the credit of $3,000 in *Mitchell's* account, under date of May 16th, should bear date April 26th, when the ninety day draft of *Walker* on plaintiffs matured and was paid, say....... 3,000 00

Real balance, April 27th, in *Walker's* favor..................... $2,580 67
      Further credits are, however, claimed for *Mitchell*, for items in his account current, on file, of a date posterior to the levying of plaintiff's attachment. They are as follows:
April 29th—To paid Evansville Insurance Company insurance on
                      corn shipped by *Preston & Brothers*.............. $214 34
May   8th—To five cents per bushel on 9,637 bushels of *D. H. Moore*,
                      as per agreement............................... 481 85
  "       "      To five cents per bushel on 33,000 bushels bought of
                      *W. W. Gray*................................. 1,650 00
  "   31st—To five cents per bushel on 39,391 bushels corn, bought
                      of *Preston & Brothers*......................... 1,969 55
  "       "      To paid for telegraph dispatches..................... 2 50
  "       "      To five cents per bushel on 7,000 bushels, bought of
                      *Kenner & Brothers*............................ 350 00

                      Total................................. $4,668 24
      A great deal of the argument has turned upon the correctness of these charges, as between *Mitchell* and *Walker*, particularly the charges of commissions on corn bought. It appears to us, however, impertinent to the issues between the attaching creditors and the garnishees to pass upon the correctness of those items, which, indeed, would involve several questions not free from difficulty.
      But the rights of plaintiffs under their attachment were fixed by the levy of the attachment and process of garnishment. It was out of the power of *Mitchell* to alter the condition of things to the prejudice of plaintiffs, by charges, correct or incorrect, of a date subsequent to the attachment. Even taking for granted that *Walker* has approved all those charges, which he now so strenuously contests, (although the approval testified by *Mitchell* and *Hill* would rather seem to have a date fixed by *Walker's* letter of the 6th of May, a date anterior to all the contested charges, except that for insurance) yet it was equally out of *Walker's* power as out of *Mitchell's* to divert the fund attached by changing the balance of his account with *Mitchell*, after this attachment. Besides, such a proceeding on the part of *Walker* would have been in fraud of

BULLITT
*v.*
WALKER.

the assignment made by him, on the 24th of April, 1854, to plaintiffs, of his rights upon the shipments of corn in the hands of those garnishees, which assignment was notified to the garnishees on the 1st of May, 1854, anterior to the date of the contested charges of *Mitchell.*

It is, therefore, adjudged and decreed, that the judgment of the District Court as to the garnishee, *Robertson & McDougall,* be affirmed ; that the judgment as regards the defendant and the garnishees, *Oglesby & McCauley,* be reversed ; that plaintiffs recover of the defendant, *William Walker,* sixteen hundred and seventy-three dollars, with interest from March 26th, 1854, until paid, and costs of the District Court ; that plaintiffs recover of *Oglesby & McCauley,* garnishees, twelve hundred and thirty-five dollars and eighty-one cents, and that the costs of appeal be borne one-half by plaintiffs and one-half by defendant and *Oglesby & McCauley.*

LEA, J., dissenting. I think that the judgment appealed from should be affirmed as it stands.

SPOFFORD, J., dissenting. I concur in the judgment relative to the claim of *Robertson & McDougall,* but I incline to the opinion that the claim of *Oglesby & McCauley* should also prevail against the attaching creditors.

The testimony of *Walker* being rejected, in the propriety of which ruling I also concur, I do not think the answers of the garnishees are contradicted ; and the circumstances of the shipment to these garnishees were such, in my judgment, as to create a contract between themselves and *Mitchell,* which *Walker,* and of consequence *Walker's* creditors, are not in a position to defeat.