## E. G. DAWES, Trustee,

*v.*

## MORRIS ROSENBAUM *et al.*

*Opinion filed April 17, 1899.*

TROVER—*what facts do not show wrongful conversion.* A wrongful conversion, by commission men, of cattle covered by a mortgage executed and recorded in another State is not shown under evidence that the mortgagee knew, when he made demand upon the commission men for the cattle, that they had sold them and accounted to the mortgagor for the profits, and that said mortgagee did not inquire who bought the cattle or had control of them or where they were, but made the demand solely for the purpose of holding the commission men liable.

*Rosenbaum* v. *Dawes*, 77 Ill. App. 295, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. JOHN BARTON PAYNE, Judge, presiding.

The opinion of the Appellate Court, by ADAMS, P. J., is as follows:

"This is an appeal from a judgment rendered in an action of trover by appellee, against the appellants, Morris Rosenbaum, Joseph Rosenbaum, Charles Haas and Henry Klopfer, partners under the firm name of Rosenbaum Bros. & Co. The declaration contains one count in trover in the usual form for two hundred head of cattle of the value of $3000. Appellants pleaded the general issue, and the cause, by agreement of the parties, was tried by the court without a jury. The court found the issues for appellee, and rendered judgment for appellee for $1709.78 and costs.

"On December 24, 1892, C. D. Hudson executed to the Farmers' Savings Bank in Marshall, in the State of Missouri, a promissory note, which, with the endorsements thereon, is as follows:

" '15831.                          MARSHALL, Mo., *Dec. 24, 1892.*

" 'Eight months after date I promise to pay to the order of Farmers' Savings Bank $8000, for value received, negotiable and payable at the Farmers' Savings Bank in Marshall, Mo., with interest from maturity at the rate of eight per cent per annum until paid, and if interest be not paid annually it shall become part of the principal and bear the same rate of interest.

Due Aug. 24, '93.—$8000.00.'                    C. D. HUDSON.

"Indorsed on the back:

" 'Protest waived.—JAS. S. GORDON, *Pr.*'

" 'This note is allowed against estate of C. D. Hudson for the sum of twenty-two hundred & fifty-four & 70/100 dollars ($2254.70.)          JAMES COONEY, *Assignee of C. D. Hudson.*'

" 'Credited this 26th March, 1894, with distribution by assignee of $157.82, being 7%.'

" 'Credited Mch. 15, '95, with distribution by assignee $25.15.'

"To secure payment of the note, Hudson at the same date executed to appellee a chattel mortgage in the form of a trust deed, of one hundred and fifty head of two and three-year old native feeding steers then on Hudson's farm near Mt. Leonard, Saline county, Missouri, which were by the trust deed warranted to be free and clear of encumbrances. Dawes, the appellee, was named as the second party in the trust deed and the Farmers' Savings Bank as the third party. The deed contained substantially the following provisions: 'Whereas said Hudson is justly indebted to said bank as per said note of December 24, 1892, and agrees to pay taxes and properly feed and care for said steers as said bank cashier may determine; now, if said note and interest be paid when due and payable, deed shall be void and property released, but if default be made in payment of said note and interest when due, or failure to properly feed and care for said steers as said cashier may determine, then the legal holder of said note may at once declare the same due and sale at his option be had forthwith; or in the faithful performance of said agreement this deed shall remain in force,

179—8

and second party (or in case of death, and a sale be desired by holder of note, the sheriff,) may sell at public vendue to the highest bidder, upon giving notice, and out of the proceeds shall pay costs and expenses of this trust and whatever may be in arrear and unpaid on note, remainder to first party.'

"By the statute of the State of Missouri, put in evidence by the appellee, it is lawful for the mortgagor or grantor in a deed of trust of personal property to retain possession of the property if the instrument has been acknowledged or proved and recorded in the county in which the grantor or mortgagor resides. The statute does not require that the instrument shall, in terms, provide that the mortgagor or grantor may retain possession. That the trust deed in question was properly acknowledged and recorded is not controverted.

"August 2, 1893, Hudson, the grantor in the trust deed, being in possession of the cattle, shipped to Chicago to appellants, who were and are commission men engaged in selling cattle in the Chicago market, thirty-one head of cattle, thirty of which were cattle described in the deed of trust, one of which was a stag, not included in the deed. Prior to the last date Hudson had made two shipments to the appellants of cattle included in the trust deed, viz., twenty-two head shipped July 16, 1893, and forty-five head shipped July 25 or 26, 1893. Appellants sold and accounted to Hudson for the July shipments, and Hudson testified that they sold for about $3530. There is no controversy between the parties as to the July shipments, the controversy being solely as to the August, 1893, shipment. Appellants sold the August shipment, thirty-one head, August 3, 1893, and rendered an account of the sale to Hudson, showing the net proceeds to be $1502.08.

"The parties, on the trial, stipulated as follows: 'First, that the following may be considered as facts in this case: That on August 3, 1893, the defendants received

from the mortgagor, Hudson, the cattle in controversy in this suit, and that at that time neither any of the defendants nor any of their agents had any notice or knowledge as to the existence of the trust deed in evidence, or any other mortgage or lien upon any of the property here in controversy, other than that imputed to them by law on account of the recording of said deed of trust in Missouri; that on said August 3, 1893, the defendants in good faith sold the cattle here in controversy in open market to Nelson Morris & Co., then and still engaged in business in Chicago, Illinois, as packers and feeders, buyers, sellers and dealers in cattle, for the sum of money shown on the sales account in evidence, and that it was never disclosed to the plaintiff or to the bank to whom the cattle were disposed of by the defendants; that thereafter, and on the same date, they credited the proceeds of said sale to their account with Hudson, and that at the said time Hudson was, and since then has continuously remained, indebted to the defendants in a sum largely in excess of the amount received by the defendants on the sale of the cattle, so that after crediting said proceeds Hudson still remained, and continually since has remained, indebted to the defendants; that on August 3, 1893, the defendants were, and for years theretofore had been, engaged in the business of selling cattle in Chicago as commission merchants; that they were acting as such commission merchants in selling the cattle in question,' etc.

"The president of the bank, James A. Gordon, testified that $5774.44 had been paid on the note, and that part of said payments consisted of a draft on appellants for $3500, which was deposited in the bank July 29, 1893, credited to Hudson, and applied on the note August 24, 1893, when the note matured. The same witness testified that he knew that Hudson had been in the habit of shipping cattle to Rosenbaum Bros. & Co., and that they were in the live stock commission business.    It is a fair infer-

ence that the $3500 draft on appellants was drawn against the proceeds of the July shipments to appellants.

"About the first part of October, 1893, Abiel Leonard, a director of the Farmers' Savings Bank, came to Chicago with a letter of introduction to the appellants from Mr. Gordon, the president of the bank, and called on appellant Joseph Rosenbaum, and told him that he came to demand the cattle that the bank had a mortgage on and which had been shipped by Hudson, and that Rosen-. baum became angry and refused to discuss the matter with him. Leonard testified that before he left Missouri to come to Chicago, and when he made the demand for the cattle, he knew they had been shipped by Hudson to and sold by appellants, and that appellants had in some way accounted to Hudson for the proceeds of the sale. Prior to the 29th of July, 1893, the Farmers' Savings Bank discounted Hudson's note which the trust deed was made to secure, in the Commercial Bank of St. Louis, and from the time it was so discounted until it matured, August 24, 1893, it was the property of the last named bank.

"Counsel agree that the rights of the parties depend on the law of the State of Missouri, where the trust deed was executed, and counsel for appellee read in evidence the opinions in the following cases: *National Bank of Commerce* v. *Morris*, 114 Mo. 225; *Lafayette County Bank* v. *Metcalf*, 40 Mo. App. 494; *Same* v. *Same*, 29 id. 384. And counsel for appellants read in evidence the opinions in the following cases: *Turner* v. *Langdon*, 85 Mo. 441, *Hickman* v. *Dill*, 32 Mo. App. 516, *Barnett* v. *Timberlake*, 57 Mo. 500, and the case in 29th Missouri, *supra*.

"The trust deed contains no insecurity clause,—that is, no provision that if the trustee or the bank should at any time feel insecure, possession might be taken of the property by the trustee or the bank. Only two cases in which such possession could be taken are provided for: one, if default should be made in payment of the note and interest when due; the other, failure to properly

feed and care for the steers, as the cashier of the bank might determine. The first contingency did not occur until August 24, 1893,—twenty-one days after appellants had sold the cattle,—and there is no claim that the second ever occurred. Was the sale of the cattle by appellants a conversion?

"The facts in *Lafayette County Bank* v. *Metcalf*, 29 Mo. App. 384, read in evidence by appellee's counsel, were very similar to those in the present case. The mortgagors in that case executed to the bank a chattel mortgage of a lot of cattle and hogs to secure the payment of their note to the bank for $2000, due six months after date. About a month before the maturity of the note the mortgagors shipped the cattle to commission merchants in East St. Louis, in the State of Illinois, for sale, and the commission merchants sold them and accounted to the mortgagors for the proceeds of the sale. The action was against the commission merchants, and was, as the court say, in the nature of trover. The court say: 'It is conceded that at the time of the alleged conversion the draft, or any part thereof, was not due. The possession then, at the time of the alleged conversion, by the very letter of the bond was in the mortgagors. No rule of law is better settled than that the mortgagors, under such circumstances, have the title to the property, and having the possession they have an interest which they may sell and may transfer the possession to the vendor. It is an interest which may be seized under process at the suit of another creditor of the mortgagor and sold, and the purchaser will take the possessory right and the title of the mortgagor, subject, of course, to the lien of the mortgage,'—citing cases. In the case cited there was an express provision in the mortgage that the property should remain in the possession of the mortgagor until default in payment of debt and interest. But, as before stated, the statute of Missouri, put in evidence by appellee, does not require that the mortgage shall contain such provi-

sion. The only section of the statute in evidence bearing on the question is as follows: 'No mortgage or deed of trust of personal property hereafter made shall be valid against any other person than the parties thereto, unless possession of the mortgaged· or trust property be delivered to and retained by the mortgagee or trustee or *cestui que trust,* or unless the mortgage or deed of trust be acknowledged or proved and recorded in the county in which the mortgagor or grantor resides, in such manner as conveyances of lands are by law directed to be acknowledged or proved and recorded.'

"The trust deed in question being of cattle on ·the grantor's farm, and he being required to properly feed and care for the cattle, we are of opinion that the trust deed provides, by necessary implication, that he shall remain in possession.

"*Hickman* v. *Dill,* 32 Mo. App. 509, was replevin for wheat which had been mortgaged to secure payment of a promissory note. There was no provision in the mortgage for the retention by the mortgagor of possession of the property until default in the payment of the debt, no insecurity clause, and no provision for the taking possession by the mortgagee except on default in payment of the note. Plaintiff, before the maturity of the note, brought replevin. The court say: 'The weight of authority in the United States seems to maintain that the right to possession of mortgaged chattels rests in the mortgagee immediately upon the execution of the mortgage, if there be no express or *implied* stipulation in it to the contrary, whether the debt be due and payable or not. (Jones on Chattel Mortgages, sec. 426, and cases cited.) Yet the decisions in this State hold that a trustee or mortgagee is not entitled to possession until after default made or condition broken,'—citing *Shelbe* v. *Curdt,* 56 Mo. 437, and *Barnett* v. *Timberlake,* 57 id. 499. The court, after holding, as in *Lafayette County Bank* v. *Metcalf, supra,* that a mortgagor in possession has an interest which he may

sell and which is subject to sale under legal process, say: 'Under the law as thus established in this State we must hold, that as the debt secured by the deed of trust was not due, and no forfeiture had occurred at the time the plaintiff instituted his suit, as against the mortgagor or his assignee, the plaintiff was not entitled to the immediate possession of the wheat, and could not reap a perfect success in his action of replevin.'

"In *Barnett* v. *Timberlake*, 57 Mo. 499, the plaintiff sued out legal process and took from the defendant property described in a trust deed executed by the defendant to the plaintiff to secure payment of a promissory note which had not yet matured. The court held that the plaintiff could not recover, saying: 'The law is well settled that although a trustee or mortgagee of personal property is, after default made or condition broken, entitled to the possession and considered in law the owner of the property thus mortgaged, yet prior to that time it is equally certain that no such right of either possession or ownership exists.'

"In each of the cases of *Lafayette County Bank* v. *Metcalf*, 40 Mo. App. 424, and *National Bank of Commerce* v. *Morris*, 114 Mo. 258, (both of which cases are relied on by appellee's counsel,) there was a provision in the mortgage entitling the mortgagee to immediate possession in case the mortgagor should sell or remove, or attempt to sell or remove, the mortgaged property, and the cases in that respect are clearly distinguishable from prior Missouri cases in which the mortgages contained no provision for possession by the mortgagee except on default in the payment of the debt secured, and in which the court held that until such default the mortgagor, and not the mortgagee, was entitled to possession. In the case in 114th Mo. *supra*, the court uses this language: 'Authorities of high character, including those cited by counsel for defendants, hold that until such option is exercised by the mortgagee and he either so takes or demands the pos-

session, the possession remains with the mortgagor until default made in the payment of the debt, and that a sale made by him before such default or assertion of right will not support trover against the vendee or agent making the sale.—*Bank* v. *Metcalf*, 29 Mo. App. 392; *Skiff* v. *Solace*, 23 Vt. 279; *Hathaway* v. *Brayman*, 42 N. Y. 325; *Hamill* v. *Gillespie*, 48 id. 556; *Cadwell* v. *Pray*, 41 Mich. 307.' And the court decided the case for the plaintiff (Ibid. 265) on the express ground that a removal and sale of the property was contrary to the terms of the mortgage.

"We have examined the Vermont, New York and Michigan cases cited *supra* in the opinion of the Missouri court, *supra*, and find that they fully sustain the language above quoted from the opinion. In *Hamill* v. *Gillespie*, 48 N. Y. 556, the court say of mortgaged property which had been sold under an execution against the mortgagor: 'It was not material to inquire how much the defendant obtained for the wheat and oats. He bought only the interest of Markle, (the mortgagor,) whatever that might be, subject to the mortgage. He could lawfully sell that interest again. Whether he received much or little is of no consequence to the plaintiff. If he sold the whole title he might be liable to the purchaser in case the grain should be afterward taken from him under the mortgage; but that would be a question in which the plaintiff would have no concern.' In the same case the court held that no wrong was done to the plaintiff, the mortgagee, by the sale,—that he still might pursue his lien under the mortgage.

"In *Durfee* v. *Grinnell*, 69 Ill. 371, the court (p. 373) say: 'Had there been no provision in the mortgage allowing the mortgagees to reduce the property to possession, and the mortgage by its terms had authorized the mortgagor to hold the property until the maturity of the notes, then the interest of the mortgagor could have been seized and sold under execution at any time before the debts fell due, and the purchaser would have succeeded to all

of the rights, but no more than the debtor held in the property; nor would the mortgagees have had any power to prevent the sale. The law authorizes a sale in such a case in despite of the creditor,' etc. The language of the court in the above quotation, namely, 'and the mortgage by its terms had authorized the mortgagor to hold the property until the maturity of the notes,' is used with reference to the statute of this State, which in terms requires that 'the instrument shall provide for the possession of the property to remain with the grantor.' But we have already shown that the Missouri statute in evidence does not so require, and the Missouri court of appeals, in *Hickman* v. *Dill,* cited *supra,* expressly held that such a provision in the mortgage is not necessary to the retention of possession by the mortgagor, and in our opinion this is a correct construction of the Missouri statute in evidence. *Simmons* v. *Jenkins,* 76 Ill. 479, is to the same effect as *Durfee* v. *Grinnell, supra.*

"The rule deducible from the authorities cited is, that when, by the mortgage, the mortgagor is entitled to the possession of the mortgaged property until default in the payment of the secured debt, the mortgagee has not, before such default, either the right of property or of possession, and until such time the mortgagor may sell, the purchaser taking only his (the mortgagor's) interest, and the remedy of the mortgagee is to follow the lien of his mortgage in the hands of the vendee. At the time of the sale in question the note secured by the mortgage had not matured; there had been no default on the part of the mortgagor; he had lawful right to sell; therefore the sale was not a conversion. But even though it should be conceded that the sale was a conversion, appellee could not recover in trover, because at the time of the sale, August 3, 1893, neither appellee nor the Farmers' Savings Bank had any right of property, general or special, in the mortgaged property or any right to the possession of it. In *Stock Yards Co.* v. *Mallory, etc. Co.* 157 Ill. 554, the

court say: 'In an action of trover, which is a possessory
action, the plaintiff must recover upon the strength of
his own title and not upon the weakness of his adver-
sary's title; and he must show not only a tortious con-
version of the personal property by the defendant, but
also that at the time of the alleged conversion he had
the right of property, general or special, in the chattels
converted, and also the possession or the right to the
immediate possession thereof,'—citing a number of prior
decisions of the Supreme Court.

"But appellee's counsel contend that the failure of ap-
pellants to deliver the cattle on demand made by Abiel
Leonard on Joseph Rosenbaum was a conversion. 'The
demand must be made on the defendant while the prop-
erty is in his possession. His ability to comply with the
demand is necessary to give the demand force and effect.'
(Cobbey on Replevin, sec. 476; Cooley on Torts,—2d ed.—
sec. 454, top p. 532; Wells on Replevin, sec. 375; *Davis* v.
*Buffum*, 51 Me. 160; *Dearbaurn* v. *Union Nat. Bank*, 58 id.
274; *Hill* v. *Belasco*, 17 Ill. App. 194.) The demand was
made in October, 1893. The cattle had been sold the pre-
vious August, and both Leonard, who made the demand,
and the Farmers' Savings Bank, knew that appellants
had sold the cattle and had ceased to have any control
over them.

"But appellee's counsel contend that because Rosen-
baum did not place his omission or failure to deliver the
property on the ground that appellants had sold it, there-
fore his failure to deliver was a conversion,—citing *Udell*
v. *Slocum*, 56 Ill. App. 216, and *Cassidy* v. *Elk Grove Land Co.*
58 id. 39. In the former case the court say of a refusal to
deliver on demand: 'If the refusal to surrender was upon
the ground that he had parted with the possession, he
should have put it on that ground, so that the plaintiff
might learn where to seek the property,' etc. In the lat-
ter case the owners of stolen cattle applied to commission
men who had sold them, for information as to who the

purchasers were. Neither case is applicable to the present case. Leonard, who made the demand, knew that the cattle had been sold, and he did not ask to whom they had been sold. A demand and refusal do not constitute a conversion. They are, at the most, but evidence of a conversion. (Cooley on Torts, sec. 454; Cobbey on Replevin, sec. 449; Wells on Replevin, sec. 349; *Hill* v. *Belasco, supra.*) How the demand and alleged refusal could be held to be evidence of a conversion in the present case, in which, as we have shown, what was done prior to the demand was not a conversion, we cannot perceive.

"In view of what has been said we do not deem it necessary to pass specifically upon the errors assigned in relation to propositions of law held and refused. We can not conclude this opinion, however, without some suggestions as to the rule, apparently supported by numerous adjudications, that the constructive notice of a mortgage, resulting from its acknowledgment and recording in the State in which it is executed, is also constructive notice in other States, and to the citizens of other States to which the mortgaged property may be removed, thus giving to the law of the State in which the mortgage is executed extra-territorial effect. The courts base this rule on the doctrine of inter-State comity, but it seems to us that this doctrine should not be extended to the detriment of citizens of the State. In many cases the rule that citizens of this State are bound by constructive notice of a chattel mortgage executed and recorded in another State necessarily and inevitably operates to the detriment of such citizens. Chicago is one of the largest cattle markets in the world. In the case of the shipment of mortgaged cattle here for sale by commission men or brokers in open market there is absolutely no protection for purchasers. If the prospective purchaser applies to the broker for information as to whether the cattle are encumbered he can get none, because the brokers, like appellants in the present case, are ignorant of encum-

brances. If he asks the shipper's name and residence he finds that he lives in Texas or North Dakota, and if he can afford to wait and communicate with him he will probably receive no information on the subject. He can not afford to visit the State and county from which the cattle were shipped to inspect the record. He is a farmer, and, taking the chances, buys the cattle in open market for the full market price and takes them to his farm in McLean county to fatten them for re-marketing—a thing of common occurrence. He feeds them for three or four months, when along comes the mortgagee with his mortgage, identifies and demands the cattle, and the farmer must either pay the mortgage debt or give up the cattle. Is it not a serious question whether inter-State comity should be extended when its extension may lead to such consequences? In *Skiff* v. *Solace,* 23 Vt. 279, mortgaged property was removed from New York to Vermont and attached in the latter State by a citizen of Vermont, and the court sustained, as against the mortgagee, the lien of the attaching creditor. In reference to recognizing the law of New York by comity the court say: 'But such recognition does not take place by any foreign State when it would be incompatible with its own authority *or prejudicial to the interest of its own subjects.*' See, also, Story on Conflict of Laws, sec. 32, *et seq.*

"The judgment will be reversed."

The Appellate Court made a special finding of facts, as follows: "The court finds that Abiel Leonard, who made demand on appellants for the cattle in question, knew before he left Missouri to come to Chicago to make said demand, and knew at the time he made said demand, that appellants had sold the cattle and had accounted with Hudson, the mortgagor, in respect to the proceeds of the sale, and that appellants had no control of the cattle, and that said Leonard made no inquiry of appellants, or any of them, as to the vendee of said cattle, or as to who had control of the same, or as to where the

same were, and that said Leonard made said demand solely for the purpose of attempting to hold appellants liable for said cattle."

An appeal is prosecuted to this court, and error is assigned in reversing the finding and judgment of the trial court and in finding the facts different from the facts as found by the trial court.

JOHN MAYO PALMER, CYRUS W. RICE, and LESLIE OREAR, for appellant.

MORAN, KRAUS & MAYER, for appellees.

Mr. JUSTICE PHILLIPS delivered the opinion of the court:

By its finding of facts the Appellate Court found that the agent of the bank who made demand on appellees for the cattle in question knew at the time he made the demand that appellees had sold and accounted with Hudson for the proceeds of the sale of the cattle, and that the agent of the bank made no inquiry of appellees, or any of them, as to the vendee of the cattle, or who had control of them, or as to where they were, and that the demand was made solely for the purpose of holding appellees liable for them. Concurring, as we do, with the Appellate Court, its judgment must be affirmed, as, under the demand and the facts surrounding it, as especially found by the Appellate Court, and under the facts appearing in this record, there is no evidence of a wrongful conversion by appellees.

The judgment of the Appellate Court for the First District is affirmed.                    *Judgment affirmed.*