C. E. WHITE & CO. v. CENTURY SAVINGS BANK OF DES MOINES, IOWA.

(Circuit Court of Appeals, Seventh Circuit.   January 4, 1916.)

No. 2227.

1. FACTORS ⬅49—LIABILITY TO THIRD PERSONS.

A factor, though he acts innocently and in good faith, is liable in tort to the true owner or lienor of chattels against whom the principal's act of placing the chattels with the factor is a tort; but this liability is limited to cases in which there were defects in the principal's right of possession when he turned the chattels over to the factor.

[Ed. Note.—For other cases, see Factors, Cent. Dig. § 81; Dec. Dig. ⬅49.]

2. FACTORS ⬅49—AUTHORITY—REVOCATION.

If a principal has in fact good title and right of possession when he delivers chattels to a factor to sell, the factor's possession is lawful, and his authority to sell continues until he has notice of revocation.

[Ed. Note.—For other cases, see Factors, Cent. Dig. § 81; Dec. Dig. ⬅49.]

3. CARRIERS ⬅58—BILLS OF LADING—OWNERSHIP OF CHATTELS—CONVERSION.

A stock buyer, who had been shipping hogs to commission merchants with instructions to sell them on commission, shipped hogs and received a "straight" bill of lading designating the commission merchants as consignees. He indorsed the bill of lading in blank and delivered it, with a draft on the commission merchants, to a bank, which discounted the draft. Before the draft was presented to the commission merchants, and before notice to the commission merchants of the transfer of the bill of lading the commission merchants received the hogs from the carrier and sold them. *Held*, that the sale of the hogs was not a tort, and did not render the commission merchants liable in trover to the bank, since, while the transfer of an "order" bill of lading may be deemed evidence of an intended pledge of the chattels described therein, as an assignment of the shipper's rights against the carrier, a straight bill of lading is not a true document of title, possession of which is symbolic of actual possession, and the carrier's possession is on behalf of the consignee, and though the consignor may transfer his interest in the shipment, neither he nor his transferee can disturb the effect of the straight bill of lading as against the carrier or the consignee without notice.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 179–190; Dec. Dig. ⬅58.]

In Error to the District Court of the United States for the Eastern District of Illinois; Francis M. Wright, Judge.

Action by the Century Savings Bank of Des Moines, Iowa, against C. E. White & Co., a corporation. Judgment for plaintiff, and defendant brings error. Reversed, with directions.

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Dan McGlynn, of East St. Louis, Ill., for plaintiff in error.
Edward C. Kramer, Rudolph J. Kramer, and Bruce Campbell, all of East St. Louis, Ill., and W. C. Marshall and W. W. Henderson, both of St. Louis, Mo., for defendant in error.

Before BAKER, KOHLSAAT, and MACK, Circuit Judges.

BAKER, Circuit Judge. This is an action in trover, instituted by defendant in error, a bank at Des Moines, Iowa, against White & Co., a commission house at East St. Louis, Ill. Judgment for the bank was entered upon a directed verdict.

To sustain the charge of a tortious appropriation of the bank's chattels, the following proofs were made: On June 22, 1908, Hough was a stock buyer at Des Moines and was the owner and in possession of 319 hogs. He took them that day to the Wabash Railroad, which loaded them into cars and issued to him a bill of lading for their transportation from "Shipper L. R. Hough," at Des Moines, to "Consignee C. E. White & Co.," at East St. Louis. Hough on the same day took the bill of lading to the bank, indorsed it in blank, and signed a demand draft on White & Co. in favor of the bank for $3,900. On delivery of this draft and bill of lading the bank paid Hough the face value less lawful discount. From prior similar, but separate and independent, transactions the bank knew that Hough was a stock buyer who was accustomed to retain ownership of his shipments and to place them in the hands of White & Co. and other factors to be sold on commission. In taking the draft and bill of lading now in question the bank relied on the facts being, as they were, that Hough was the owner of the 319 hogs, and that White & Co. had no title to them, and no interest except to sell them on commission. In the evening of the same day the bank deposited the draft with the bill of lading attached in the mail; but, instead of forwarding them directly to a bank at East St. Louis, it sent them to its correspondent bank at Kansas City, with which it had an arrangement for avoiding collection charges. So the draft and bill of lading did not reach East St. Louis and were not presented to White & Co. until June 25th. In the meantime, on the morning of June 23d, the hogs arrived in East St. Louis and were delivered by the railroad to White & Co. Prior to this time White & Co. had continuing authority and instructions from Hough to receive his hogs and sell them promptly on commission. During the day of June 23d White & Co. sold the hogs. Hough never directly revoked his instructions. If his transfer of the bill of lading to the bank was an indirect revocation, White & Co. had no knowledge thereof until two days after they had parted with possession of the hogs.

Do these facts sustain the judgment in tort?

[1] Ordinarily a factor must rely upon his principal's honesty or financial responsibility to protect him in dealing with chattels placed in his hands by the principal. No matter what innocence and good faith may characterize the factor's acts, he is liable in tort to the true owner or lienor against whom the principal's act of placing the chattels with the factor is a tort. This liability, however, is limited to cases in which

there were defects in the principal's right of possession when he turned the chattels over to the factor.

[2] If the principal has in fact good title and right of possession when he delivers the chattels to the factor to sell, the factor's possession is lawful, and his authority to sell continues until he has notice of revocation. In Jones v. Hodgkins, 61 Me. 480, for example, McLaine, principal, owner of logs, put them in possession of Hodgkins, factor, with authority to sell. McLaine in March sold the logs to Jones, but neither McLaine nor Jones did anything towards transference of possession. In April Hodgkins, without knowledge of his principal's sale to Jones, sold and delivered the logs to an innocent purchaser. Held, that Jones' action in trover against Hodgkins was not sustainable on these facts. But the principle there declared does not solve the present problem. There no bill of lading as representative of the chattels was involved, and the factor was in actual possession under perfect authority before and at the time his principal transferred title to a third party. Here the hogs were in the actual possession of the carrier under a bill of lading hereinbefore described, Hough had transferred his interest as owner to the bank as collateral security, and the indorsed bill of lading was in the hands of the bank, before White & Co. came into actual possession.

Nor is an answer found in any of the following classes of cases:

1. Where, as in Reed v. Racine Boat Co., 156 Iowa, 12, 137 N. W. 458, there is an "order" or "bearer" bill of lading, requiring production and surrender of the bill before the carrier can lawfully surrender possession, in which cases the carrier and the innocent factor may severally be liable. For here the bill of lading is not of that kind.

2. Where, as in Taylor v. Turner, 87 Ill. 296, there is a "straight" bill of lading to a named consignee other than the shipper, under which the carrier may lawfully deliver possession to the consignee without the production and surrender of the bill of lading, and where the indorsee or holder of the bill of lading has in fact consented to the sale by the factor consignee. For here the bank did not in fact consent to the sale by White & Co. If the bank's consent is found, it must be as a matter of law, contrary to the bank's actual intent.

3. Where, as in Means v. Bank of Randall, 146 U. S. 620, 13 Sup. Ct. 186, 36 L. Ed. 1107, there is a "straight" bill of lading to a factor as consignee, and the factor, while still in possession and control of the chattels, has actual notice of his principal's prior sale of the chattels and transference of the bill of lading to a third party. For here there is in fact no question of White & Co.'s ignorance of the bank's interest and of their good faith in making the sale.

[3] In our judgment the difficulties in the present case arising from an apparent conflict between principles concerning factors and principles concerning the rights of indorsees or holders of bills of lading are solvable by reference to the different aspects in which a transference of a bill of lading may be considered.

These are three: 1. As evidence of an intended sale, pledge, or mortgage of the chattels described in the bill of lading, the same as a separate document would be evidence. 2. As an assignment of the

shipper's rights against the carrier. 3. As a symbolic delivery of the chattels, equivalent in law to manual delivery. It would seem that there could be no doubt that all these elements characterize the transference of an "order" bill of lading.

But is the third element present as against the factor consignee of a "straight" bill of lading? In our judgment, No. We believe that a "straight" bill of lading is not a true document of title, possession of which is symbolic of actual possession, and that the carrier's possession, though not for all purposes the actual possession of the consignee, nevertheless is on his behalf. Williston on Sales, par. 413. If the consignor be in truth the owner and the consignee merely his factor, the consignor may transfer his interest as owner to a third person. But for that purpose his assignment on and delivery of the bill of lading are of no greater force than would be a separate bill of sale while the chattels were in the actual possession of the carrier for the factor consignee. For, "strictly speaking, no person but such consignee can, by an indorsement of the bill of lading, pass the legal title to the goods." Conard v. Atlantic Ins. Co., 1 Pet. 386, 445, 7 L. Ed. 189. In other words, though the owner consignor may deal with his interest as owner by separate documents (and they are separate even if written upon the bill of lading), he is powerless to disturb the effect of the "straight" bill of lading as against the carrier or the factor consignee without notice. And this we believe is just, because the owner is the one who creates the bill and selects its form. Necessarily the transferee of such a bill is bound to take notice of its form and acquires no greater rights than the transferrer had. And so the bank, succeeding only to Hough's interest as owner of the consigned hogs, and failing to prove notice to White & Co. of its interest before sale by White & Co., has not sustained its declaration in trover.

In addition to the authorities hereinabove mentioned, we have examined, among others, the cases noted in the margin.[1]

The judgment is reversed, with the direction to grant a new trial.

[1] Dows v. National Exchange Bank, 91 U. S. 618, 23 L. Ed. 214; North Penn. R. Co. v. Commercial Bank of Chicago, 123 U. S. 727, 8 Sup. Ct. 266, 31 L. Ed. 287; Lee v. Bowen, 5 Biss. 154, Fed. Cas. No. 8,183; Flannery et al. v. Harley, 117 Ga. 483, 43 S. E. 765; Dawes v. Rosenbaum, 179 Ill. 112, 53 N. E. 585; Hamilton v. Joseph Schlitz Brewing Co., 129 Iowa, 172, 105 N. W. 438, 2 L. R. A. (N. S.) 1078; Bullitt, Miller & Co. v. Walker, 12 La. Ann. 276; Harper v. Little, 2 Greenl. (Me.) 14, 11 Am. Dec. 25; Wigton v. Bowley, 130 Mass. 252; Forbes v. Boston & Lowell Railroad, 133 Mass. 154; Singer v. Merchants' Despatch Transportation Co., 191 Mass. 449, 77 N. E. 882, 114 Am. St. Rep. 635; Bank of Litchfield v. Elliott, 83 Minn. 469, 86 N. W. 454; Johnson v. Martin, 87 Minn. 370, 92 N. W. 221, 59 L. R. A. 733, 94 Am. St. Rep. 706; Davenport National Bank v. Homeyer, 45 Mo. 145, 100 Am. Dec. 363; Hays v. Warren, 46 Mo. 189; Scharff v. Meyer, 133 Mo. 428, 34 S. W. 858, 54 Am. St. Rep. 672; Moore v. Bowman, 47 N. H. 494; Kelsea v. Ramsey & Gore Mfg. Co., 55 N. J. Law, 320, 26 Atl. 907, 22 L. R. A. 415; First National Bank of Cincinnati v. Kelly, 57 N. Y. 34; Holmes, Lafferty & Co. v. German Security Bank, 87 Pa. 525; Barnes Safe & Lock Co. v. Bloch Bros. Tobacco Co., 38 W. Va. 158, 18 S. E. 482, 22 L. R. A. 850, 45 Am. St. Rep. 846; American Thresherman v. Citizens' Bank of Anderson, Ind., 154 Wis. 366, 141 N. W. 210, 49 L. R. A. (N. S.) 644.