**St. Paul Cattle Loan Company, Appellee, v. Joseph S. Hansman et al., trading as Hansman, Thompson & Ball, Appellants.**

**Gen. No. 25,070.**

1. CHATTEL MORTGAGES—*when commission men have right to sell mortgaged cattle.* Live stock commission men who sold the steers in question at Chicago for the owner in the ordinary course of business, without either actual or constructive notice that they were subject to a chattel mortgage recorded in Wisconsin, or to any other lien, were vested with the right to sell the steers as they did, and pass good title thereto to the purchaser.

2. EVIDENCE, § 33*—*when common law presumed to be same in foreign States as in this State.* Under the condition of the record in trover by the holder of a chattel mortgage on steers, executed in Minnesota and recorded in Wisconsin, against live stock commission men who sold the stock for the owner at Chicago in the open market in due course of business, without notice of the mortgage, the court assumed that the common law was the same in Minnesota and Wisconsin as it is in this State, viz., that the possession of personal property is prima facie evidence of ownership and that title passed by delivery.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

3. CHATTEL MORTGAGES, § 193*—*what must be proved in trover by mortgagee against commission men who sold mortgaged cattle.* In trover by the holder of a chattel mortgage upon steers, executed in Minnesota and recorded in Wisconsin, against live stock commission men who sold the steers for the owner in open market at Chicago, without either actual or constructive notice of plaintiff's claim, plaintiff was not entitled to recover in the absence of proof that he was entitled to any lien, right or claim by the laws of Minnesota because of the execution and delivery of the mortgage in that State, and in the absence of proof that the steers were ever in Wisconsin after the date of the mortgage, and in the absence of evidence as to the laws of Wisconsin creating any lien by a mortgage of the kind in question.

Appeal from the Municipal Court of Chicago; the Hon. DENNIS W. SULLIVAN, Judge, presiding. Heard in this court at the March term, 1919. Reversed with judgment of *nil capiat* and for costs against plaintiff. Opinion filed October 27, 1919.

BOYLE, MOTT & MILLER, for appellants.

GARDNER & CARTON, for appellee; JOHN M. ZANE and EDWARD A. HAYES, of counsel.

MR. JUSTICE HOLDOM delivered the opinion of the court.

This is an action in trover for the conversion of 52 head of yearling steers, which it is claimed were converted by defendants, plaintiff claiming title in virtue of a certain chattel mortgage purporting to convey the steers to plaintiff by one William Giebel, the then owner. On a trial before the court there was a finding and judgment against defendants in the sum of $903.05, and defendants appeal.

The cause was tried upon a stipulation of fact. The crux of the dispute rests for solution upon the fact as to whether there was any unlawful conversion of the cattle by the defendants.

The chattel mortgage was executed by William A. Giebel in Dakota County in the State of Minnesota to

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

the plaintiff at South St. Paul in that State. The note which the chattel mortgage was made to secure was executed at South St. Paul, Minnesota, for the sum of $1,077.95, with interest at 8 per cent per annum from date until paid.

The facts controlling our decision rest in the stipulation of the parties upon which the cause was tried: That the plaintiff is a corporation under the laws of West Virginia and that its business is loaning money to purchasers of cattle upon notes of the purchasers secured by chattel mortgage upon the cattle purchased; that defendants were partners in the live stock commission business at the Union Stock Yards, Chicago, under the name of Hansman, Thompson & Ball; that about June 26, 1916, the mortgagor, William A. Giebel, of Flambeau, Wisconsin, applied to plaintiff at South St. Paul, Minnesota, for a loan of $1,077.95, and offered as security a chattel mortgage on 52 head of yearling steers, and on the next day executed his note for the said sum, together with a chattel mortgage securing the same conveying the steers; both note and mortgage are made exhibits in the stipulation; that the chattel mortgage was filed for record on July 22, 1916, with the township clerk of Washington township, Rusk county, Wisconsin, in which Flambeau, is situated; that on or about October 7, 1916, Giebel shipped the cattle described in the mortgage to the Union Stock Yards, Chicago, where he placed them in the hands of defendants for sale 2 days thereafter; that before and at the time of the sale of the cattle and the delivery of the proceeds to Giebel none of the defendants or their agents had any actual notice or knowledge of the existence of the chattel mortgage upon the cattle or of the existence of any other lien upon them; that on October 9, 1916, the defendants, in good faith, sold the cattle in controversy in open market at the Stock Yards to Swift & Company; that defendants received a commission of $25

for making the sale; that on the day following the sale defendants delivered to Giebel a cashier's check on the Live Stock Exchange National Bank for $1,334.87, and in doing so defendants acted in good faith without any knowledge of any claim of plaintiff against the cattle. Giebel took the check, went away, but did not leave Chicago until October 11. On October 11 he met one of the defendants and in the course of a general conversation told him that the cattle were mortgaged to the plaintiff in St. Paul, but that he intended to pay the mortgage. Defendants then demanded that Giebel return the check, which he refused to do on the ground that he intended to pay the mortgage at St. Paul, and then left Chicago. Defendants thereupon went to the Live Stock Exchange National Bank and asked the bank if they could stop payment on the check and the bank agreed to stop payment. Defendants wired plaintiff as follows: "Holding proceeds William Giebel cattle sold Monday, understand you have mortgage. What disposition shall we make?" which was the first knowledge or notice plaintiff had of the removal or sale of the property by Giebel, to which plaintiff replied: "Send proceeds of Giebel cattle to us. We have mortgage." Defendants on receiving this telegram wrote plaintiff, "We have your wire and note you hold mortgage against Wm. Giebel's cattle which we sold Monday. After giving Mr. Giebel a Chicago Exchange for the net proceeds, $1,334.87, we found the cattle were mortgaged and immediately stopped payment on the check. As soon as a reasonable time elapses, the bank will issue a new check and we will send same to you." About October 15, 1916, a member of defendants' firm went to Holcomb, Wisconsin, in an endeavor to locate Giebel, whom he ascertained was at the home of a sister in St. Paul. He thereupon called the plaintiff over the 'phone and told him of the whereabouts of Giebel, saying that if they would go right over to

Giebel they could probably get their money. The party telephoning plaintiff thereupon left for St. Paul, where he arrived the following morning, called at plaintiff's office and talked with the officer of the company with whom he had communicated over the telephone, asking him whether he had taken any action against Giebel; he replied that he had not and that he had no interest in Giebel, as they were looking to defendants for their money; that later Giebel cashed the cashier's check through the Merchants' National Bank of St. Paul, a bona fide purchaser for value, and the Live Stock National Bank honored the check on its being presented, as it was legally bound to do; that Giebel had not paid the mortgage note either then or at any subsequent time. About October 28, 1916, J. J. Flanagan, president of plaintiff's company, called at defendants' office and demanded from one of the defendants the amount due on the face of the Giebel note, plus interest, which demand was refused, and this suit was brought.

Defendants were admittedly innocent of any claim of right, title or interest of plaintiff in the steers which they sold at the Stock Yards for Giebel as commission merchants in the ordinary course of their business, until after the sale was made, the purchase price paid and the transaction so far closed that they had no further control either of the steers or the purchase price. They not only did not have any actual knowledge of the claim of plaintiff but no constructive knowledge. Nothing occurred or was brought to defendants' attention regarding the situation which gave them any notice of plaintiff's interest either in the steers or of its dealings with Giebel. Defendants did no act which in any way brought to them any information regarding the chattel mortgage or plaintiff's claim thereunder. As innocent parties in the transaction they cannot be made to suffer for the neg-

ligent manner in which plaintiff transacted its dealings with Giebel.

When the chattel mortgage on the steers was executed they were in Minnesota, as was also Giebel. They were purchased at South St. Paul and the whole transaction took place there. While it is true the mortgage recited that the steers were thereafter to be kept in Rusk county, Wisconsin, still there is no proof that the mortgaged steers were at any time in the State of Wisconsin, notwithstanding the fact that the mortgage was filed, as provided by the Wisconsin statutes, with the clerk of Washington township in Rusk county. Plaintiff never made any demand on defendants for the steers; the demand made was for the amount unpaid upon the mortgage note.

It is clear from the facts recited in the stipulation on which the cause was tried that there was never at any time a tortious conversion of the steers. Plaintiff in virtue of its chattel mortgage from Giebel had no lien upon the steers, for while the mortgage was executed and delivered in Minnesota, there is no evidence that by the laws of that State plaintiff acquired any lien, right or claim in virtue thereof. Lacking proof that the steers were at any time after the date of the mortgage in Rusk county, Wisconsin, or evidence as to the laws of Wisconsin regarding any lien created by a chattel mortgage of the character of the one from Giebel to plaintiff, we cannot say that the mortgage in evidence created any lien on the steers in favor of plaintiff. As defendants received the steers from Giebel in due course of their business without notice of any claim or lien thereon in favor of plaintiff, they were thereby vested with the right to sell them as they did and pass a good title thereto to the purchasers.

In the condition of the record we will assume, in the absence of any proof to the contrary, that the common law is the same both in Minnesota and Wisconsin as

it is in this State, that the possession of personal property is prima facie evidence of ownership and that title passes by delivery.

Under the statutes of this State the Giebel mortgage was void as against defendants and all purchasers of the mortgaged steers for value. The courts of this State will not enforce a mortgage executed out of this State conveying personal property against a bona fide purchaser for value in this State who has neither actual nor constructive notice of its existence. *Dawes v. Rosenbaum,* 179 Ill. 112.

At no time did plaintiff have an immediate right to the possession of the steers mentioned in the mortgage, so there could be no wrongful conversion of them, either when they came to the possession of defendants from Giebel for sale by them as commission men at the Stock Yards, or at the time they sold and delivered them to the purchaser. Right of possession is a *sine qui non* to the right to maintain an action for conversion. *Dawes v. Rosenbaum, supra; Union Stockyard & Transit Co. v. Mallory, Son & Zimmerman Co.,* 157 Ill. 554.

We are referred to an opinion of the United States Circuit Court of Appeals for the Seventh Circuit rendered in *Hoyt v. Zibell,* 259 Fed. 186, which involved the title to an auto truck under a chattel mortgage. The opening sentence of the opinion shows its inapplicability to the facts of the instant case. In the *Hoyt* case the chattel mortgage on the auto truck was executed and recorded in Lake county, Indiana, where the mortgagor resided and the truck was located; therefore the question of the extraterritorial effect of a chattel mortgage is not in this case, because the chattel mortgage in the record now being reviewed had, so far as the record shows, no force or effect either in Minnesota or Wisconsin.

Under the facts stipulated and on which the cause

St. Paul Cattle Loan Co. v. Hansman, 215 Ill. App. 190.

was tried in the Municipal Court, plaintiff had no right of action against defendants. As there is no proof of a wrongful conversion of the steers, the judgment of the Municipal Court is reversed and a judgment of *nil capiat* and for costs entered in this court.

*Reversed with judgment of nil capiat and for costs against plaintiff.*