JOHN REED, Appellee, v. RACINE BOAT COMPANY, Defendant, E. A. SHERMAN et al., Garnishees, and NATIONAL LUMBERMEN'S BANK OF MUSKEGON, MICHIGAN, Intervener, Appellant.

**Sales:** TRANSFER OF TITLE: DELIVERY THROUGH CARRIER.  Where the seller of property consigned the same to his own order for shipment, taking a bill of lading and requiring a surrender of

the same properly indorsed before delivery of the property to the purchaser, and the bill of lading with a draft attached was forwarded for collection, the title and control of the property remained in the seller until payment of the draft and delivery of the bill of lading to the purchaser, although there was a direction on the bill of lading to deliver the same to the purchaser.

**Same.**  Where property is consigned to the seller with instructions to deliver the same to the purchaser upon payment of a sight draft and surrender of the bill of lading, the fact that the purchaser was to pay transportation charges did not constitute the carrier his agent, so that mere delivery of the property to the carrier was delivery to the purchaser, thus passing the title. Neither did the fact that the bill of lading bore a direction to deliver the property to the purchaser waive the express provision that the same properly indorsed should be required before delivery; nor did it constitute the purchaser the consignee of the shipment.

**Same.**  Where the seller of property, consigned to his own order, in good faith negotiated the bill of lading with a draft for the price attached, the legal title to the property vested in the purchaser of the bill of lading and draft, and this title could not be divested by the unauthorized act of the carrier in delivering the property to the purchaser without requiring a surrender of the bill of lading as provided therein, or by garnishment of the buyer by a creditor of the seller.

**Garnishment:**  NOTICE TO GARNISHEE.  A judgment against a garnishee who had no notice of the garnishment is invalid.

*Appeal from Superior Court of Cedar Rapids.*—HON. C. B. ROBBINS, Judge.

`MONDAY, MARCH 11, 1912.

THE opinion states the case.—*Reversed* and *remanded.*

*Redmond & Stewart* for appellant.

*Wm. G. Clark* and *W. E. Steele* for appellee.

WEAVER, J.—The plaintiff in the main action seeks

to recover damages from the defendant boat company for breach of an express or implied warranty of a gasoline launch sold him by the latter. In aid of his said action plaintiff sued out a writ of attachment, and served notice of garnishment on E. A. Sherman and other parties. The defendant is a nonresident corporation doing business in Michigan, and the plaintiff and Sherman are residents of Cedar Rapids, Iowa. The original notice of the action was served or attempted to be served upon the defendant in Michigan on August 13, 1909, and it has entered no appearance in these proceedings. The garnishee, Sherman, responding to the statutory questions before the sheriff, answered, admitted that he had purchased a boat from the defendant, upon which account there was due a cash payment of $229.90, and stating his readiness to pay that sum into court for the benefit of the party found entitled to it, should he be awarded possession and ownership of the boat. Thereafter the National Lumbermen's Bank of Muskegon, Mich., intervened, alleging that the boat ordered by Sherman had by the boat company been delivered to the carrier, consigned to the said company's own order at Cedar Rapids, and a bill of lading taken therefor, by the terms of which said shipment was to be retained in the possession of the carrier until the presentation and surrender of said bill duly indorsed by the boat company; that upon receipt of said bill of lading the company drew its draft or order upon Sherman for the cash payment due from him, and having attached the bill, properly indorsed, to said draft, the company negotiated and sold the same to the intervener, who at once forwarded it for collection to the Merchant's National Bank of Cedar Rapids, Iowa, with instructions to said bank to deliver the same to Sherman upon receipt of the money. The shipment was delivered to the carrier on July 8, 1909, and the bill of lading was issued as of that date, though not actually delivered until one or two days later. The delivery of the bill and draft

to the bank took place on July 10, 1909. The petition in this action was filed July 8, 1909. The notice of garnishment was served, according to the return thereon, July 10, 1909; but the officer, as a witness on the stand, was permitted to testify that the service was made on July 9th. It should also be said that, the boat having arrived in Cedar Rapids, the carrier delivered it to Sherman without presentation or surrender of the bill of lading, and that plaintiff thereupon caused said boat and the draft and bill of lading then in the hands of the Merchants' National Bank to be seized under his writ of attachment. The sheriff, having levied on the boat, left it in the possession of Sherman, taking his receipt therefor. The plaintiff denied the allegations of the petition of intervention, and the issues so joined were tried to a jury. At the close of the testimony the court withdrew the cause from the jury, entered a personal judgment against the boat company for $245, with interest and costs, dismissed the petition of intervention, and ordered Sherman to pay the said sum of $229.90 into court, to be applied upon plaintiff's judgment against the boat company. The intervener appeals.

I. The transaction between the boat company and Sherman is the subject of no material dispute. Sherman was a newspaper publisher, who, after correspondence with the company ordered a boat of a given description at the price of $400, which by agreement between them was to be paid $200 in cash and $200 in advertising. To the order was added certain extra furnishings to the amount of $29.90 to be paid for in cash. Sherman, it is conceded, ws to pay the freight from the factory to Cedar Rapids. When the boat was ready, the company delivered it to the carrier, consigned to the company's own order at Cedar Rapids. The closing paragraph of said bill, which is the material feature thereof for the purposes of this case, is

1. SALES: transfer of title: delivery through carrier.

in the following words.: "The surrender of this original order bill of lading properly indorsed shall be required before the delivery of the property. Inspection of property covered by this bill of lading will not be permitted unless provided by law, or unless permission is endorsed on this original bill of lading or given in writing by the shipper. Consigned to order of Racine Boat Manufacturing Company. Destination, Cedar Rapids, state of Iowa. Notify E. A. Sherman, at Cedar Rapids, state of Iowa. Route, Crosby care the St. P. at Mil. Description of article and special marks, one boat crated. Racine Boat Mfg. Company, Shipper, per H. S. Stanton. J. M. Mason, Agt." Upon the back thereof was also written.: "Deliver to E. A. Sherman. Racine Boat Manufacturing Company, F. Caspar, Cash." So far as appears from the record, the draft and bill of lading were delivered to the intervener in the regular course of business and without any knowledge or notice of the action brought by the plaintiff.

It is argued for the appellee that, as Sherman was to pay the freight on the boat ordered by him, the carrier was his agent for the purposes of such transportation, and the delivery of the boat to such carrier was in law a delivery to him, and his title to the property thereby became fully vested and could not be divested by the act of the company in negotiating the draft and bill of lading to the intervener.

2. SAME.

It is further insisted that the indorsement upon the bill of lading, "Deliver to E. A. Sherman," had the effect to neutralize or waive the restrictive provisions of the bill, and convert the transaction into an open, unrestricted shipment direct to Sherman. The argument is unsound. The words "Notify E. A. Sherman" and "Deliver to E. A. Sherman" do no more than to designate the person who was expected to present the specific proof of his right to demand and receive the goods. They are in no manner inconsistent with the express stipulation that "the sur-

render of this bill of lading properly indorsed shall be required before the delivery of the property;" nor can it be said to substitute Sherman as the consignee of the shipment. The intent of the parties is not to be determined by a single isolated act, word or phrase; but reference must be had to the transaction and the writings as a whole. Thus examined, it becomes perfectly evident that it was the purpose and intent of the defendant company, by shipping the boat upon consignment to its own order and drawing and negotiating the draft with the bill of lading attached, to withhold the title to and control of the property until the cash payment was made, and that upon receipt thereof, and not till then, should the bill of lading be delivered to Sherman as the evidence of his right to demand and receive the boat from the carrier. It is immaterial whether there was any agreement upon the part of Sherman to pay a draft drawn on him for the admitted amount of the cash payment. It was the undoubted right of the seller to demand the money before delivering the boat, whether that delivery was to be made in Michigan or at Cedar Rapids. It was equally its right, had it seen fit so to do, to put the boat in charge of its own custodian, with instructions to take it to Cedar Rapids and demand and receive payment as a condition precedent to delivery, and we can conceive of no reason why, instead of this somewhat burdensome expedient, it was not at liberty to effect the same purpose by resorting to the familiar device of making the consignment to its own order, draw on the purchaser for the cash payment, and authorize the carrier to deliver the shipment to him upon his presentation of the proper evidence that such payment had been made. A delivery by the seller to the carrier of a shipment consigned to his own order is not a delivery to the purchaser, and it does not of itself effect a transfer of title to the latter. The record before us presents no evidence from which a finding that the boat was delivered by defendant to the garnishee,

or that the title thereof ever passed to him, can be sustained.

II.   It is shown in evidence without dispute that on July 10, 1901, the defendant boat company negotiated the draft with bill of lading attached to the intervener bank and received full credit therefor upon its books, and that said papers have never been returned by the bank and said credit has been in no manner canceled or charged back to the company. Within a short time thereafter the company's account, including said credit, was on one or more occasions overdrawn.   The draft and bill have never been returned from the collecting bank in Cedar Rapids, and are presumably still held under the attachment levied thereon in favor of plaintiff.   The effect of the negotiation of a draft with bill of lading attached was recently considered by this court in *Bank v. Mowery,* 149 Iowa, 114.   We there said: "The retention of the bill of lading and its delivery to the bank, to be delivered to the consignee upon payment of the price, is sufficient evidence of the purpose of the shipper to retain title until payment was made."   In support of such holding numerous cases were cited.   In the same connection we quoted with approval from *Greenwood's* case, 72 S. C. 450 (52 S. E. 191, 2 L. R. A. (N. S.) 79, 110 Am. St. Rep. 627, 5 Ann. Cas. 261), as follows: "As between the vendor and purchaser, the authorities leave no room for doubt that even if the bill of lading provides for delivery to the consignee, yet if the consignor draws for the price, attaching the bill of lading to the draft, this is sufficient evidence of his intention to reserve the title and right of possession until the draft is paid."   To the same effect is the quotation from Freeman's note to *Chandler v. Sprague,* 38 Am. Dec. 419:   "Where the bill of lading, whether drawn so as to make the goods deliverable to a designated consignee or to the shipper's order, is attached to or to accompany a draft for the price, which is

3. SAME.

forwarded for collection, it is clear that the shipper reserves a *jus disponendi*, which prevents the passing of the title until the draft is paid."

Moreover, unless a contrary intention is made clearly to appear, the universal holding of the authorities is that the bill of lading of property delivered to a carrier is a symbol of the property itself, and its possession by the shipper, or by any other person to whom it is indorsed, is evidence of title in the holder. *Bank v. Mowery, supra; Ayres v. Dorsey,* 101 Iowa, 141; *Railroad v. Johnson,* 45 Neb. 57 (63 N. W. 144). According to all precedents the negotiation and delivery of the draft and bill of lading to the bank had the effect to vest the legal title to the shipment in the bank, and this could not be divested by the unauthorized act of the carrier in delivering the property to Sherman without surrender of the bill of lading; nor could the title or right of the bank be defeated by a garnishment of Sherman. He had none of the company's property in his hands. He owed the company nothing. Upon the admitted facts he was under no legal obligation whatever to pay for the boat until it. was delivered to him, or at least until delivery was tendered him, and at the time of the garnishment this concededly had not been done. How his relations and obligations may have been affected by his taking possession of the boat without surrender of the bill of lading we need not consider, further than to say that, if he thereby made himself legally liable to pay the claim, such obligation was to the intervener, the holder of the bill of lading, and not to the boat company.

The record discloses no notice of any kind to. the defendant of the garnishment of Sherman, and without such notice or appearance the court could 4. GARNISHMENT: notice to garnishee. not rightfully enter judgment against the garnishee. Code, section 3974. It is possible that service of some kind was made, or attempted; but we

must take the record as it is shown by the abstract, and none there appears.

For the reasons stated, the judgment appealed from must be reversed, and the cause remanded for further proceedings in harmony with this opinion.—*Reversed.*