BELL JONES COMPANY, Appellee, v. ERIE RAILROAD COMPANY et al., Appellants.

**APPEAL AND ERROR:** Jurisdiction—Finding of Fact—When Con-
1 clusive. The findings of fact by the lower court that the person on whom an original notice was served in an action against a corporation was the agent of such corporation will not be dis-

turbed unless the record shows an entire absence of evidence on which such findings may be reasonably based.

**RAILROADS—Action Against—Process—Service on Agent—Evidence 2 of Agency.** Jurisdiction of a railroad company is secured by service of the original notice on any *"agent or person transacting the business"* of such company, in the county where suit is brought, within the meaning of Section 3529, Sup. Code, 1913.

> PRINCIPLE APPLIED: For years one Tennis had held himself out and advertised himself in the county where suit was brought, as the agent of the "Erie Railroad Co." and the "Erie Despatch," displaying the names of said concerns in his office window, and having his name as such agent in the city directory, all of which was known to those who were admittedly the agents of the Erie Railroad Co. The "Erie Despatch" proved to be nothing but a "name"—a means of securing business for "The Erie Railroad Co.," and allied lines. *Held,* sufficient to show that Tennis was such agent of the "Erie Railroad Co.," that jurisdiction of such company would be obtained by service of original notice on such agent under Section 3529, Code Sup., 1913.

*Appeal from Scott District Court.*—HON. WM. THEOPHILUS, Judge.

SATURDAY, DECEMBER 19, 1914.

THE opinion states the case and the material facts.— *Affirmed.*

*Cook & Balluff,* for appellants.

*Isaac Petersberger,* for appellee.

WEAVER, J.—On May 15, 1912, the plaintiff filed its petition in the district court alleging that the defendants are common carriers and that on October 11, 1911, it delivered a quantity of eggs to said carriers for transportation from Davenport to New York City; that such eggs were damaged in the course of such transportation resulting in a loss to plaintiff of $187.49 for which sum judgment was demanded. An original notice of said action was returned as having been served on the defendants by reading and the delivering of copy

to one Oliver C. Tennis, their agent at Davenport. On June 10, 1912, the default of the defendants was entered and judgment rendered against them for $146.88 and costs. On June 29, 1912, an execution having been issued on the judgment, the Chicago, Rock Island & Pacific Railroad Company was garnished by service of proper notice. On the same day one A. E. Carroll filed in the case a paper entitled a "Petition as *Amicus Curiae*" declaring that he did not appear for either defendant but suggesting that Tennis was not the agent of the Erie Railroad Company and that the judgment against that company has been rendered without jurisdiction and should be vacated. The petition was verified by one F. G. Lantz. On September 10, 1912, the Rock Island Company answered as garnishee admitting an indebtedness in an amount sufficient to satisfy the judgment. On November 2, 1912, a notice of the garnishment in proper form was returned by the sheriff showing service on the Erie Railroad Company and Erie Despatch by reading and by delivering copy to D. Lee Porch, agent of the defendant at Davenport. On December 3, 1912, the court entered judgment in said proceedings against the Rock Island Company for $176.76. The matter of the so-called "petition of *amicus curiae*" not having been disposed of, plaintiff secured an order summoning Lantz, who verified the petition, into court for cross-examination. His examination disclosed the fact that he was an assistant general freight agent of the Erie Railroad Company and he answered at considerable length interrogatories as to the identity and character of the Erie Despatch and its relation to the Erie Railroad Company. On January 13, 1913, the court overruled or dismissed the petition *amicus curiae*. Three days later the Erie Railroad Company entered a special appearance by Carroll Brothers, attorneys, and moved to set aside the judgment and default without stating any ground therefor except by reference to an attached affidavit by Lantz denying that the Erie Railroad Company had any agent in Davenport at the time the original notice purports

to have been served, and denying any such agency in said city at any time thereafter. The motion to vacate judgment and set aside the default was overruled January 21, 1913. Notice of appeal from the court's ruling refusing to vacate the judgment and set aside default was served on February 3, 1913, and a supersedeas bond was filed on the same day. On February 15, 1913, a general execution was issued upon the judgment against the Rock Island Company as garnishee and on February 20, 1913, the sheriff returned said writ as having been duly executed by collection of the amount of the judgment in full. June 20, 1913, the Erie Railroad Company filed a motion to set aside the judgment against the garnishee as having been rendered without jurisdiction and supporting the same by the affidavit of Lantz that the person upon whom notice of the hearing upon garnishment was served was not the agent of the defendant. On June 30, 1913, the court overruled the motion to set aside the judgment against the. garnishee. On July 9, 1913, the parties stipulated for a dismissal of the appeal taken in the preceding February and the defendant Erie Railroad Company served a new notice of appeal from the order overruling the motion to vacate the judgment against it in the principal case and from the subsequent order overruling the motion to vacate the judgment against the garnishee. The foregoing recitation covers all the material facts shown by the record except certain items of evidence.

I. We have first to inquire whether the record sufficiently sustains the jurisdiction of the trial court in entering the judgment on the principal case, and whether there was any error in refusing to set aside said judgment and open the default.

1. Appeal and error: jurisdiction: finding of fact: when conclusive.

So far as this consideration involves questions of fact the findings of the court thereon must be upheld unless we find an entire absence of evidence on which the same may reasonably be justified. The evidence offered by appellee in resist-

ance to the motions to vacate the judgment and set aside the default was to the effect that Tennis had for several years maintained an office in Davenport holding himself out and acting as the agent of the Erie Railroad Company and Erie Despatch. Also that he advertised his said agency by displaying the names of said defendants in his office windows, the railway company's name with that of Tennis, agent, was found in the city directory, and that Tennis' actions in this respect were known to the railroad company through its admitted agents and officers who personally visited such office. But the real question raised by appellant and the validity of the proceedings in the court below turn to a large extent upon the relation existing between the Erie Despatch and the Erie Railroad Company. It is the claim of appellant that Tennis was agent of the former but not of the latter and service on him therefore gave the court no jurisdiction over the railroad company. The witness, Lantz, on whose testimony appellant chiefly relies, is the assistant freight agent of the Erie Railway Lines west of Buffalo, N. Y., and was formerly connected directly with the Erie Despatch. He testifies that up to June, 1912, Tennis was agent of the Erie Despatch at Davenport and was then succeeded by D. Lee Porch, but neither was agent of the railroad company. He says of the Erie Despatch, "It is not incorporated. It is just a name. Just a means of getting business for the through routes of the Erie Railroad Company. . . . It has its own system of accounts and the expenses are tabulated and at the end of the month are apportioned among the paying members of the line. . . . The Erie Railroad Company is the chief beneficiary of these arrangements. . . . Getting down to essentials the Erie Despatch is simply a name. It is not incorporated under the laws of any state. . . . Mr. Tennis was representing the interests of all the members of the Erie Despatch. The Erie Railroad Company was a member. . . . It was possible but hardly probable for Mr. Cook, the general traffic manager of the Erie Railroad Company, to have authorized Tennis to

act for that company either generally or specifically. Would not swear that it did not happen. . . . While I was in the service of the Erie Despatch I considered myself an employee of the Erie Railroad Company.'' So far as appears from the record the Erie Despatch neither owns, operates or controls any railroad or rolling stock or other means of business as a common carrier. From the somewhat meager showing in this case we think it may fairly be said that the Despatch is an agency organized and operating primarily to secure freight traffic for the Erie Railroad Company, and secondarily (where a shipment obtained is destined to some point beyond its lines), to direct its transportation over some other lines affiliated with the Erie Railroad Company in paying the expenses of such agency. The right of the shipper to route his shipment is recognized but, as Mr. Lantz admits, if not so routed, it ''in all instances goes over the Erie.'' Such a showing amply justifies the conclusion that the Erie Despatch and the persons operating under that ''name'' are mere agents of the Erie Railroad Company—certainly in so far as their operations relate to the securing of business for that company. And even if it be said that the so-called Despatch also has the secondary purpose of securing or directing business over other lines having what Mr. Lantz calls, ''working arrangements'' with the Erie, it would seem to be a sufficient answer that such agency for other lines is not inconsistent with the finding that its first and primary business is an agency for the Erie Railroad Company. Without any imputation upon the good faith of that company we think it should be said that the law cannot look with any favor upon an arrangement by which a shipper of freight over a line of railroad will be driven to a game of hide and seek with the carrier in order to fix responsibility for a breach of its duty to properly handle and deliver the shipment. If a carrier may organize its traffic force or a part of it under a mere trade appellation and send them out over the country at large to open offices and solicit business and then when a controversy arises between the company and

a shipper it may repudiate such agency as a "mere name," a thing without form and void, and the courts are to be held powerless to cope with such situation, then, to put it very mildly, the arm of the law is much shorter and its power to administer justice much more restricted than the world has been led to believe. The case of *St. Louis Ins. Co. v. R. R. Co.,* 104 U. S. 146, cited by the appellant is in no manner parallel to this case. There the "Despatch Company" was an independent corporation, a soliciting agency for shipment of cotton from St. Louis to New York for export without exercising any direction or control of the route over which it should be carried to the last named city, a state of facts radically differing from those we are here dealing with and not calling for the application of the same or similar principles. It follows we think that the record affords sufficient support for the finding of the trial court that Tennis and Porch were in fact and in law the agents of the appellant.

II. The next inquiry is whether the agency is of that character which makes the service upon the persons named sufficient to give the court jurisdiction of the case. By Code Supplement of 1907, Sec. 3529, it is provided

2. RAILROAD: action against: process: service on agent: evidence of agency.

that where the action is against any railroad company or foreign corporation, service may be made "upon any general agent of such company wherever found," or "upon any station, ticket or *other* agent or person transacting the business thereof *or* selling tickets therefor in the county where the action is brought." Code Secs. 3531 and 3532 make other provisions as to service upon corporations but the section first cited appears to cover the situation with which we have to deal. We have already held that the trial court did not err in finding Tennis to be an agent of the railroad company. He was a resident of the county having an office therein and transacting business there for his principal. As such he comes fairly within the statutory description, "other agent or person transacting the business thereof." It is true that Lantz as a

witness makes a categorical denial of such agency but when he comes down to facts as distinguished from argument and conclusion his own statements go very far to establish the existence of the agency which he denies and such finding has material support in other circumstances shown by the record.

Counsel for appellant concede that if the trial court's finding of such agency is sustained then the judgment is valid and the ruling denying the motion to set aside the judgment in the garnishment proceedings must likewise be affirmed, and such will be our order. No sufficient ground appearing for a reversal of the judgment and rulings below they are— *Affirmed.*

Ladd, C. J., Evans and Preston, JJ., concur.