William G. Murphy, Appellant, v. Albany Pecan Development Company et al., Appellees.

**PROCESS:** Service—Nonresident—Foreign Corporation—Jurisdiction Over—"Agency." (A) Jurisdiction of a foreign corporation may be obtained by service (a) upon any general agent of such corporation or (b) upon any other agent or person transacting the business thereof in the county where the action is brought. (Sec. 3529, Sup. Code, 1913.)

(B) When a corporation, company or individual has, for the transaction of any business, an office or agency in any county other than that in which the principal resides, service may be made on any agent or clerk employed in such office or agency, in all actions growing out of or connected with the business of that office or agency. (Sec. 3532, Code.)

PRINCIPLE APPLIED: Plaintiff brought action against two foreign corporations and one nonresident to cancel a land development contract. These defendants constituted one concern, or at least were acting together. Service was made in this state on one Wright, on the claim that he was defendants' agent. Evidence showed he had taken applications or contracts, sent them to defendants for approval and received commission for so doing, though the defendants paid no part of his office expenses. He received some payments on contracts. Wright was so engaged for some two or three years. During this time, one of the defendants, in response to inquiry, wired that Wright was its agent to sell, subject to the defendant's approval as to terms of contract.

(a) *Held,* Wright was agent of the individual nonresident defendant within Sec. 3532, Code.

(b) *Held,* Wright was agent of the foreign corporations defendants within both Sec. 3532, Code, and Sec. 3529, Sup. Code, 1913, and jurisdiction was acquired by the service.

*Appeal from Polk District Court.*—Hon. W. H. McHenry, Judge.

WEDNESDAY, MARCH 17, 1915.

ACTION to have contract rescinded on grounds of breach of same and fraud, and for damages. Defendants, other than John L. Wright, appear specially and move to quash the return and service of notice on non-resident defendants. The motion was sustained. Plaintiff appeals.—*Reversed.*

*C. N. Pickler,* for appellant.

*Miller & Wallingford* and *Oliver H. Miller,* for appellees.

PRESTON, J.—The three defendants named in the caption, other than John L. Wright, are non-residents of Iowa. Two of them are corporations. Service was had upon them by serving John L. Wright as their agent. The issues were as to whether proper service was made upon John L. Wright as agent to acquire jurisdiction of the appellees. Appellees' motion was supported by affidavits, as was plaintiff's resistance thereto, and both parties offered evidence of witnesses in court.

1. PROCESS: service: non-resident: foreign corporation: jurisdiction over: "agency."

The grounds of the motion are, in substance, that the first two named defendants are non-resident corporations and the other defendant is a non-resident; that they neither individually nor collectively have any officer or agent within the county of Polk and state of Iowa, and that no agency is maintained by any of them in said county; that John L. Wright is not in the employ of any of the defendants; that he is, so far as is known to the defendants, an independent broker and has acted as such in all transactions which are referred to in the petition. The affidavit of John L. Wright, made a part of the motion, states that he is not the agent of any of his co-defendants; that he is not in the employ of any of said co-defendants, and that he has been given no authority to represent them or their business within the state of Iowa; that they do not contribute to any of his office expenses; and

that the only transaction he has ever had with them is that of
an independent broker. He testified as a witness:

"I know Mr. Murphy. My individual transactions with
him, I can't remember. I don't know what my personal trans-
actions were. I talked with him a little I know, but what
transactions there were I can't say. I took application Exhibit
'A,' a contract, and forwarded it to the Company. As com-
pensation for taking these applications they paid me a com-
mission. We had a verbal arrangement, if I obtained any
contract for development or procured a prospect of sale of
any of this Pecan Development Company in Florida I was
to receive a commission. I received the application and for-
warded it to them. I did not make any endorsement on the
application at all in the way of approving it. I received noth-
ing as a contribution of any kind from any of these defendants
towards the expenses of my office or by way of salary. I
never received any compensation on this deal whatever. I
do not know whether or not Mr. Murphy has paid any of the
payments except the first annual payment; he has not to me.
Sometimes some of them have brought checks payable to the
company to me to send down. In those instances, payments
were made out in the company's name and I received no com-
pensation whatever for sending down this Murphy contract.
That arrangement was had at the time the Murphy contract
was obtained by the Girardeau Company.

"I was down there the last time in August, this year.
My arrangement with the Albany Pecan Development Com-
pany is an oral one, somewhat different in detail and compen-
sation than the one with the Girardeau Company; it is all
verbal. I never saw, nor had in my possession, the original
of an agreement signed by Mr. Murphy on May 28, 1913,
and I never saw this copy of it. The Albany Pecan Develop-
ment Company, and the Girardeau Company, and J. H.
Girardeau, Jr., were all non-residents of the state of Iowa.
I know M. R. Kennedy. He never left any application with

me for any of these defendant companies. He called on me, but I do not know whether it was with reference to an application or not. I did not send any telegram down there for him and did not receive one. He never bought any land or stock in the development company through me.

### CROSS-EXAMINATION.

"I know Mr. Kennedy and have had a conversation with him. He came and asked me if I was agent for the Albany Pecan Company and I told him yes. I probably did fill out this application, I couldn't say whether I did or not, for the chances are I did.

### RE-DIRECT-EXAMINATION.

"Mr. Kennedy asked me whether I was agent, and I told him I was in the sense that I sold the land on commission. I might say both of those transactions through this land business was by putting the buyer in touch with the company direct. I handled some, very little went through my personal hands in any way. I told Mr. Kennedy I was agent for this company in the sense I have testified to."

### RE-CROSS-EXAMINATION.

Q.   "You just told him you was agent?"

A.   "I told him I was agent—I can't recall the exact detail."

Q.   "You did go into detail?"

A.   "We said something in reference to the sale of land. I was agent in the sense of selling the land."

Q.   "Mr. Kennedy was in your office twice, he went out and came back with Mr. Murphy; and you told him the second time he was in?"

A.   "He asked me about the agency first time, and didn't stay in and he came back with Mr. Murphy, and I attempted to explain."

Plaintiff's application, Exhibit "A", referred to by the witness Wright, is as follows:

## APPLICATION FOR DEVELOPMENT.

For five acres, purchased from Columbia Florida Land Company and described as Pt. of S. W. Q. farm No. 66 in Columbia County, State of Florida.

I, the undersigned do hereby apply for the development of five acres of land in Columbia County, State of Florida, which was purchased from Columbia Florida Land Company of St. Louis, Mo., and described as part of the southwest quarter of farm No. 66 of Lake City Farms.

For a contract to fence this property with a stock proof wire fence, clear this land suitable for the best growth of Pecan trees, and to sot this orchard with Pecan trees not later than the fall following this application. Trees to be not less than three feet tall and roots not less than two years old. To be of the most approved of the finer paper-shell varieties of budded and grafted pecans and to be set twenty trees to the acre.

The trees to be carefully and thoroughly fertilized, cultivated, pruned, and cared for, according to the best scientific judgment and experience of pecan culture, for a period of sixty months after the trees are set. Any trees that may die at any time from any cause whatever are to be replaced within twelve months with trees of a proportionate larger grade as will keep the grove as near uniform as is practical at all times.

For and in consideration of such services I agree to pay Six Hundred Dollars, $600.00 as follows: One Hundred Dollars, $100.00 down and which accompanies this application and One Hundred, $100.00 on the first of each succeeding year hereafter till this full amount has been paid.

This property and grove is to be held as security for any defaults in payments as above mentioned and any such de-. ferred payments shall bear interest from default at the rate

of ten per centum per annum till paid and the contractor is at liberty to stop all developments after three consecutive defaults in monthly payments by the applicant.

I understand that I am to receive a definite contract covering this development as soon as this application is accepted. Accepted.

J. H. GIRARDEAU, JR.,       Signed WM. G. MURPHY,
    Expert Pecan Horticulturist, Monticello, Florida.

Witness Kennedy, testifying for plaintiff in resistance to the motion, says that he heard Mr. Wright's testimony as to the conversation by him with witness in Wright's office, and that he gave such conversation substantially correct.

"I authorized this telegram to be sent:
               'Des Moines, Iowa, Feb. 3, 1914.
Albany Pecan Development Co.,
    Albany, Georgia.

Desire to purchase.   Is John L. Wright your authorized agent?   Wire me.
                    MR. KENNEDY,
                      Cargill Hotel.'
"And this telegram I received from the Albany Pecan Development Company in answer:
               'Albany, Ga., Feb. 3, 1914.
Mr. Kennedy, Care Cargill Hotel,
    Des Moines, Iowa.

Wright is authorized to sell orchards subject to our approval as to terms of contract.
              ALBANY PECAN DEV. Co.'
"I purchased no stock and did not contemplate particularly making one.   I did not pay for sending the telegram. Mr. Murphy sent it.   He said he wanted to establish the fact that Mr. Wright was agent for this company."

William G. Murphy, plaintiff, testified:

"In the fall of 1910, I think it was, I was interested in

buying a tract of ten acres in the Columbia Land Company's tract at Lake City, Florida. I went to John Wright and he made out this application and sent it to Girardeau, and Girardeau sent back that contract. Mr. Wright called me up over the telephone and said the contract was there, and I went down and took him a check of $94.00. He forwarded to Mr. Girardeau, and the check was made out to Mr. Girardeau. It went on for a year and I got one or two letters from him saying everything was getting along fine. Mr. Wright said he had been down there and investigated all of the nursery companies of any importance and found Mr. Girardeau was the most reliable; that his father was a nursery man before him, and a man financially able to carry out contracts; in fact, he said Mr. Girardeau was worth over $100,000.00. Wright said he was a representative of that company. He did not say in what capacity, or what his powers were, but simply the company was reliable and he was agent for them. I paid Wright $94.00 at the time of taking the application and the next December I paid $91.00 to Girardeau. The next year it was transferred over to the Albany Pecan Company, and I paid them $100.00; the last payment was $100.00, four payments.''

### CROSS-EXAMINATION.

''I was down in the State of Georgia last January and looked over this proposition of the Albany Pecan Grove Company there. I made the payments direct to the company on this contract and not to Wright. I received the original of the letter, Exhibit '5' attached to my petition. There was a printed slip attached to this Exhibit '5.' I think this is the same slip except at the bottom of it or one part of it, I can't remember, but I think, and my wife says the same thing—she wrote it out—that she wrote that there, 'these trees must now be two years old,' when the fact of the matter was from their own statement when I was down there the

trees were not planted at that time at all. This slip is like
the one I signed, only I wrote that on there.''

Court: ''It is the same except what your wife added
to it?''

A. ''Yes.

''The first transaction I had with John L. Wright was
when I signed the application at that time for development
of an orchard. I had no conversation with Mr. Girardeau
relative to Mr. Wright's connection with the Girardeau peo-
ple. I only made the one trip down and that was last Jan-
uary, and at that time the Albany Pecan Development Com-
pany was the one that was doing the developing.''

It was conceded by appellees on the trial that Mr. Wright
is here in Des Moines, with the consent of the Albany Pecan
Company, authorized merely to the extent of receiving from
anyone who desires to hand them any applications for de-
velopment, and that he sends those applications down to this
company, and if they are approved and paid for, Mr. Wright
gets an agreed commission, but otherwise he does not, and
they do not contribute in any wise to his office expenses.

It is contended by appellees in argument that the evi-
dence does not show that any payments were made to Wright
by plaintiff, but the evidence which we have set out plainly
shows that payments were made to Wright.

1. It is largely a question of fact whether the person
alleged to be an agent for defendants is such within the
meaning of the statute. Where there is a conflict in the evi-
dence, the finding of the trial court will be upheld. In this
case there is no substantial conflict in the evidence. Secs.
3529, Code Supplement, 1907, and 3532 of the Code are the
ones cited and relied upon. So much of 3529 as applies to
this case is as follows:

''If the action is against any corporation or person own-
ing or operating any railway or canal, steamboat or other
river craft, or any telegraph, telephone, stage, coach or car

line, or against any express company, or against any foreign corporation, service may be made upon any general agent of such corporation, company or person, wherever found, or upon any station, ticket or other agent or person transacting the business thereof or selling tickets therefor in the county where the action is brought; if there is no such agent in said county, then service may be had upon any such agent or person transacting said business in any other county."

That section does not apply in this case to the individual defendant, Girardeau. Under that section, "When the action is against . . . any foreign corporation, service may be made upon any general agent of such corporation . . . or other agent or person transacting the business thereof or selling tickets therefor in the county where the action is brought."

Sec. 3532 reads: "When a corporation, company or individual has, for the transaction of any business, an office or agency in any county other than that in which the principal resides, service may be made on any agent or clerk employed in such office or agency, in all actions growing out of or connected with the business of that office or agency."

It is contended by appellees that Wright, who was served with original notice in Polk County, Iowa, as agent of the appellees, was not in the employ of any of the appellees, but was a broker, maintaining his own office and transacting his own business, and they cite the following Iowa cases to sustain their contention: *Younker v. Western Union Telegraph Co.,* 146 Iowa 499; *Bell Jones Co. v. Erie Ry. Co.,* 168 Iowa 96; *Reed v. Racine Boat Co.,* 156 Iowa 12.

In the *Younker* case, the sole question was whether sufficient notice of the claim was given to the telegraph company as provided by Sec. 2164 of the Code, and was not a question as to whether the notice was given to the proper person, but whether it was by the proper person.

In the *Bell Jones Company* case, it was shown that the

agent upon whom notice was served had for several years maintained an office in Davenport, holding himself out and acting as the agent of the Erie Railroad Company and Erie Despatch. The real question in the case turned to a large extent upon the relation existing between the Erie Despatch and the Erie Railroad Company. The service was held sufficient.

In the *Reed* case, the record did not disclose any notice of any kind to the principal defendant of the garnishment, and, without such notice or appearance, the court could not rightly enter a judgment against the garnishee under Code Sec. 3974.

Appellees also cite cases from other states, and under the statutes thereof, that service of process upon a mere traveling salesman, without any office or place of business in the state, or upon a mere soliciting agent, is not sufficient, also the case of lumber merchants who maintained a place of business of their own and were acting on their own account.

A definition of a broker is given in the *Younker* case, *supra,* and the distinction between a factor or commission merchant and a broker is pointed out. See also 2 Mechem on Agency, Sec. 2497; 4 R. C. L., pp. 242, 243 and 339.

But there are many kinds of brokers. 2 Mechem, Secs. 2363 to 2375; 4 R. C. L., 242, 328 and 330.

Even a broker may not accept commission from both sides without the knowledge of both parties. 4 R. C. L., 328.

An exception to this is where the broker acts merely as a middleman. 4 R. C. L., 330; *Stapp & Hendrick v. Godfrey,* 158 Iowa 376.

A broker's compensation is ordinarily a commission, and there must be an employment either express or implied. 4 R. C. L., pp. 297, 298, 299.

In the instant case, Wright did receive a commission from the defendants. He did not receive any from the plaintiff. Agency, in its broadest sense, includes every relation in which one person acts for or represents another by his author-

ity. In a more restricted sense, it may be defined as the relation which results where one party, called the principal, authorizes another, called the agent, to act for him in business dealings with third persons. 31 Cyc., 1189.

The duty and liability of a broker to his employer are essentially those of an agent required to exercise fidelity and good faith toward his principal in all matters that fall within the sphere of his employment. 4 R. C. L., 269.

The rights of third persons against the principal for the acts and contracts of the broker rest upon the same principles as in other cases of agency. 2 Mechem on Agency, Secs. 2494, 2495.

We think that, under the evidence in this case, John L. Wright was more than a mere broker; but, conceding for argument's sake that he was in some sense a broker, still he was an agent for the defendants, and the question is whether he is such an agent as is contemplated by the statutes, upon whom notice may be had. We do not regard it as necessary that it be shown that defendants paid the expenses of maintaining the office used by Wright. Under the authorities, we do not understand that it is even necessary, to constitute an agency, that there should be any particular room or place. In this case, it is shown that there was an office and agency in Polk County, Iowa, by the appellees, and that Wright is the agent, and that this action grows out of and is connected with such agency. He was taking these applications not only from the plaintiff, but from others, and over a period of some two or three years' time. The application of plaintiff was made in 1911, and there was nothing in the record to show any change in the method of doing business between that time and the date when the telegrams set out in the evidence were exchanged. The contract was returned to Wright after it had been approved by the company. Wright received money on the contract and forwarded the same to defendants. It does not appear in the record that Wright had any other business or that any other person was conducting the busi-

ness or connected therewith but Wright. Defendants accepted the benefits of the transactions with Wright and the plaintiff. Wright had more or less to do with visiting the defendants in regard to defendants' business. The telegrams set out show that Wright was their authorized agent. Under these and all the circumstances in the case, we think he comes fairly within the terms of Sec. 3532 of the Code, and, as to the corporation defendants, under both Secs. 3529 and 3532.

Wright's testimony is somewhat contradictory and evasive. In his affidavit, he states that he is not the agent of any of the other defendants; that he is not in their employ. In his evidence, he says he can't remember his individual transactions with plaintiff; don't know what his personal transactions were. He talked with them a little, but what transactions there were he can't say. Some of these statements are in the nature of conclusions, but when he comes to testify as a witness and states the facts, it is shown that he was their agent, that he did receive compensation, and that he did do business for them. In one place in his testimony, he says he never received any compensation on this deal whatever, and yet he admits on cross-examination that he did receive a commission. In his evidence, Wright seems to try to create the impression that he was not trying to sell Florida lands at all, but that if the people came to him and insisted upon it, he would accommodate them by taking their applications and sending them in, and the purchasers might have the privilege of sending their money to his principals, but, when sued, that he had nothing to do with them as their agent, and thus put it beyond the power of the court to cope with such situation.

Counsel for appellees seek to distinguish cases wherein defendant is a non-resident of the state and wherein he is a resident of the state, but a non-resident of the county wherein suit is brought. Such was the contention in *Gross v. Nichols,* 72 Iowa 239. But the court in that case ruled that such posi-

tion could not be sustained. The statute then was the same as 3532 now.

Without reviewing the cases upon the subject, we think this case comes within the rules laid down in the case of *Milligan v. Davis,* 49 Iowa 126; *Gross v. Nichols, supra; Locke v. Chicago Chronicle,* 107 Iowa 390; *Farmers Insurance Co. v. Highsmith,* 44 Iowa 330; *Bell Jones Co. v. Erie Co.,* 168 Iowa 96.

We think the evidence which we have set out shows that the non-resident defendants were acting together in this business, if, indeed, they are not all one concern, and that Wright was the agent for all of them. Wright testifies in regard to an arrangement had at the time when the Murphy contract was obtained by the Girardeau Company, and says that his arrangement with the Albany Pecan Development Company is somewhat different in detail and compensation than the one with the Girardeau Company. The plaintiff's contract seems to have been transferred to the Albany Company, and payments were made thereon both before and after such transfer. The application was accepted by defendant, J. H. Girardeau, Jr. The telegrams show that Wright was the agent for the Albany Company. Plaintiff testifies that he made a trip down to his pecan grove in January, and that at that time the Albany Company was doing the developing.

We are of opinion that the trial court erred in sustaining appellees' motion to quash. We think the service was sufficient. The order and judgment is, therefore—*Reversed,* and the cause—*Remanded* for trial.

DEEMER, C. J., EVANS, WEAVER and LADD, JJ., concur.