AMERICAN ASPHALT ROOF CORPORATION, Petitioner, v. FRANK
S. SHANKLAND, Judge, et al., Respondents.

APRIL 3, 1928.

*Sargent, Gamble & Read,* for petitioner.

*C. C. Putnam* and *Guy S. Calkins,* for respondents.

STEVENS, C. J.—The American Asphalt Roof Corporation,
petitioner, is a corporation organized under the laws of, and
having its principal place of business in, the state of Missouri,
but has not been authorized to do business in this state. On a
date prior to January 1, 1927, Verner Cooley, minor son of J. C.
Cooley, was severely injured in a collision of the motor cycle
upon which he was riding, with an automobile owned by peti-
tioner, and being driven by J. L. Killingsworth, one of its sales
agents in this state. An action for damages against Killings-

worth and petitioner was commenced in the district court of Polk County, Iowa, by J. C. Cooley, as next friend of Verner. The return of the sheriff upon the original notice in said action discloses the manner of service thereof upon petitioner as follows:

"I hereby certify that I received the within notice on the 11th day of December, 1926, and on the 11th day of December, 1926, I personally served the same on the within named defendant, American Asphalt Roof Company, a corporation, by reading the original to J. L. Killingsworth, general agent of said corporation, and delivered to him a true copy thereof. All done in Polk County, Iowa."

The American Asphalt Roof Corporation appeared specially in that action, and moved the court to quash the service, upon the following grounds:

(1) That J. L. Killingsworth was not, at the time, a general agent of such defendant's, but merely a traveling salesman, authorized to solicit orders for the sale of the products of the defendant.

(2) That said defendant was not engaged in business in the state of Iowa, nor subject to personal service therein.

(3) That, if Sections 11077 and 11079 of the Code of 1924 are so construed as to authorize the service of an original notice upon a mere traveling salesman, the same are void, because in contravention of the Fourteenth Amendment to the Constitution of the United States and the due-process clause thereof.

(4) That the said Killingsworth was not such an agent, in any event, upon whom personal service of the defendant could be made.

The motion to quash was overruled, and the defendant given thirty days within which to plead. Thereupon, application was made to a judge of this court for a writ of certiorari, which was allowed and duly issued.

In addition to the foregoing matters, the return of respondents discloses the following material facts, all of which are without dispute: That petitioner is engaged in the manufacture and sale of asphalt shingles, asphalt roofing, roofing felts, and other products incident thereto, at its principal place of business in Kansas City, Missouri; that it maintains branch offices at Salt Lake City and East St. Louis, but that it does not have or main-

tain an office in this state; that Killingsworth is a resident of the city of Des Moines; that he has been such resident and connected with the petitioner for more than five years as a traveling salesman; that during all of said time he has had a definitely prescribed territory, which includes Polk County, assigned to him by petitioner; that he visits the various towns and cities within such territory, for the purpose of soliciting customers for, and selling the products manufactured by, petitioner; that he has secured a large number of regular purchasers of petitioner's products in various towns and cities in his territory; that among such customers are large concerns regularly and customarily engaged in the purchase and sale of products such as those manufactured by petitioner; that, in making trips over his territory, the said Killingsworth uses an automobile furnished to him by petitioner; that the expense of maintenance and repair of said automobile is borne by petitioner; that, on the day in question, while he was proceeding on his way to Des Moines from a trip during which he called upon various regular customers, the automobile collided with a motor cycle upon which Verner Cooley was riding, with the result already stated. In addition to the foregoing, Killingsworth voluntarily, with the knowledge and obvious acquiescence of petitioner, and for the purpose of increasing and facilitating the sale of its products, solicits customers for such products and refers same to the local dealer for attention.

The return further discloses that Killingsworth had at no time maintained an office in this state; that he had no sales force or other employees; that he is not authorized to receive or make collections or to handle or transmit money of the petitioner. All orders are subject to the approval of petitioner, and all deliveries are made F. O. B. Kansas City.

The points in dispute involve Federal questions, which must be determined in harmony with the decisions of the Supreme Court. *Philadelphia & R. R. Co. v. McKibbin*, 243 U. S. 264 (61 L. Ed. 710) ; *Green v. Chicago, B. & Q. R. Co.*, 205 U. S. 530 (51 L. Ed. 916) ; *Peterson v. Chicago, R. I. & P. R. Co.*, 205 U. S. 364 (51 L. Ed. 841) ; *Thurman v. Chicago, M. & St. P. R. Co.*, 254 Mass. 569 (151 N. E. 63) ; *Tauza v. Susquehanna Coal Co.*, 220 N. Y. 259 (115 N. E. 915) ; *Hall v. Wilder Mfg. Co.*, 316 Mo. 812 (293 S. W. 760).

The right of each state to enact laws for the service of original notice or summons upon foreign corporations not authorized to do business in such state, within prescribed constitutional limitations, is well settled. *People's Tobacco Co. v. American Tobacco Co.*, 246 U. S. 79 (62 L. Ed. 587); *Philadelphia & R. R. Co. v. McKibbin*, supra; *International Harv. Co. v. Commonwealth of Kentucky*, 234 U. S. 579 (58 L. Ed. 1479).

Acting within clear constitutional authority, the legislature of this state has made provision for the service of notice upon foreign corporations transacting business therein, as follows:

"Sec. 11072 [Code of 1924]. If the action is against any corporation or person owning or operating any railway or canal, steamboat or other river craft, or any telegraph, telephone, stagecoach, or car line, or against any express company, or against any foreign corporation, service may be made upon any general agent of such corporation, company, or person, wherever found, or upon any station, ticket, or other agent, or person transacting the business thereof or selling tickets therefor in the county where the action is brought; if there is no such agent in said county, then service may be had upon any such agent or person transacting said business in any other county."

"Sec. 11079 [Code of 1924]. When a corporation, company, or individual has, for the transaction of any business, an office or agency in any county other than that in which the principal resides, service may be made on any agent or clerk employed in such office or agency, in all actions growing out of or connected with the business of that office or agency."

As applied to the facts of this case, Section 11072 may be paraphrased as follows:

"If any action is against * * * any foreign corporation, service may be made upon any general agent of such corporation * * * wherever found, or upon any * * * other agent or person *transacting the business thereof* * * * in the county where the action is brought."

The term "doing business" within a state foreign to the one in which the corporation is organized and has its principal place of business is substantially defined by the Supreme Court as follows:

"The general rule deducible from all our decisions is that the business must be of such nature and character as to warrant

the inference that the corporation has subjected itself to the local jurisdiction and is by its duly authorized officers or agents present within the state or district where service is attempted." *People's Tobacco Co. v. American Tobacco Co.*, supra. See; also, *Green v. Chicago, B. & Q. R. Co.*, supra; *International Harv. Co. v. Commonwealth of Kentucky*, supra; *Jones v. Illinois Cent. R. Co.*, 188 Iowa 850; *Dye Prod. Co. v. Davis*, 202 Iowa 1008.

It has, in some of the cases cited supra, been repeatedly declared by the Supreme Court that a decision of the lower court, if duly challenged, is subject to review in this court, and the review extends to findings of fact, as well as to conclusions of law.

Two elements are always involved: namely, Was the foreign corporation doing business, within the meaning of that term as defined by the Supreme Court, within the state, and, Was service had upon a proper or duly authorized agent thereof? Many cases involving these questions have been decided by both state and Federal courts. Except for the general rules established or recognized thereby, they are, however, of aid only to the extent that they present analogous questions of fact.

One of the rules firmly fixed by these decisions is that the mere solicitation by an agent of a foreign corporation of orders for goods does not amount to doing business, within the meaning of the decisions of the Supreme Court. *Green v. Chicago, B. & Q. R. Co.*, supra; *Philadelphia & R. R. Co. v. McKibbin*, supra; *People's Tobacco Co. v. American Tobacco Co.*, supra; *International Harv. Co. v. Commonwealth of Kentucky*, supra; *Cone v. New Britain Mach. Co.*, 20 Fed. (2d Series) 593; *Grace Co. v. Martin Brick Mach. Mfg. Co.*, 174 Fed. 131; *Strain v. Chicago Portrait Co.*, 126 Fed. 831.

Guided by the rules stated, each case must necessarily be determined upon the facts peculiar thereto. We shall make no attempt to differentiate any great number of the adjudicated cases, but the following are fairly representative of those sustaining and denying jurisdiction. The service of original notice or summons in each of the following cases, the facts of which are generally stronger than the facts of the case before us, was sustained. *International Harv. Co. v. Commonwealth of Kentucky*, supra; *International Text Book Co. v. Tone*, 220 N. Y. 313 (115 N. E. 914); *Tauza v. Susquehanna Coal Co.*, supra; *Kraus v.*

*American Tobacco Co.,* 284 Pa. St. 569 (131 Atl. 487) ; *Ruff v. Manhattan Oil Co.,* 172 Minn. 585 (216 N. W. 331) ; *Tuchband v. Chicago & A. R. Co.,* 115 N. Y. 437 (22 N. E. 360) ; *Cone v. New Britain Mach. Co.,* supra; *Denver & R. G. R. Co. v. Roller,* 41 C. C. A. 22 (100 Fed. 738) ; *Rendleman v. Niagara Sprayer Co.,* 16 Fed. (2d Series) 122; *Haskell v. Aluminum Co. of America,* 14 Fed. (2d Series) 864. In each of the following cases, the service of notice or summons was held insufficient: *Philadelphia & R. R. Co. v. McKibbin,* supra; *Green v. Chicago, B. & Q. R. Co.,* supra; *Rosenberg Bros. & Co. v. Curtis Brown Co.,* 260 U. S. 516 (67 L. Ed. 372) ; *Minnesota Com. Men's Assn. v. Benn,* 261 U. S. 140 (67 L. Ed. 573) ; *Davis v. Farmers Co-op. Eq. Co.,* 262 U. S. 312 (67 L. Ed. 996) ; *People's Tobacco Co. v. American Tobacco Co.,* supra; *Compagnie Du Port De Rio De Janeiro v. Mead Morrison Mfg. Co.,* 19 Fed. (2d Series) 163; *Carpenter v. Case Lbr. Co.,* 158 Fed. 696; *Grace Co. v. Martin Brick Mach. Mfg. Co.,* supra; *Strain v. Chicago Portrait Co.,* supra; *Thurman v. Chicago, M. & St. P. R. Co.,* supra; *Banks Grocery Co. v. Kelley-Clarke Co.,* 146 Tenn. 579 (243 S. W. 879) ; *Bauch v. Weber Flour Mills Co.,* 210 Mo. App. 666 (238 S. W. 581) ; *Wold v. Colt Co.,* 102 Minn. 386 (114 N. W. 243) ; *Hall v. Wilder Mfg. Co.,* 316 Mo. 812 (293 S. W. 760).

Two of the cases cited in the last group, one a decision of the Federal Supreme Court, and the other of a state court, as follows, *Green v. Chicago, B. & Q. R. Co.,* 205 U. S. 530 (51 L. Ed. 916), and *Thurman v. Chicago, M. & St. P. R. Co.,* 254 Mass. 569 (151 N. E. 63), will be given particular consideration: the former because it is cited and apparently forms the basis of the conclusion announced in many of the cases referred to in that group, and because in some of the later decisions it has been distinguished, if not to some extent disapproved; and the latter, as typical of the many well considered decisions of the state courts upon the subject.

The court's opinion in *Green v. Chicago, B. & Q. R. Co.,* is short, and the following extract therefrom contains a complete statement of all of the material facts thereof:

"The eastern point of the defendant's line of railroad was at Chicago, whence its tracks extended westward. The business for which it was incorporated was the carriage of freight and passengers, and the construction, maintenance, and operation of

a railroad for that purpose. As incidental and collateral to that business, it was proper, and, according to the business methods generally pursued, probably essential, that freight and passenger traffic should be solicited in other parts of the country than those through which the defendant's tracks ran. For the purpose of conducting this incidental business, the defendant employed Mr. Heller, hired an office for him in Philadelphia, designated him as district freight and passenger agent, and in many ways advertised to the public these facts. The business of the agent was to solicit and procure passengers and freight to be transported over the defendant's line. For conducting this business, several clerks and various traveling passenger and freight agents were employed, who reported to the agent and acted under his direction. He sold no tickets, and received no payments for transportation of freight. When a prospective passenger desired a ticket, and applied to the agent for one, the agent took the applicant's money, and procured from one of the railroads running west from Philadelphia a ticket for Chicago and a prepaid order, which gave to the applicant, upon his arrival at Chicago, the right to receive from the Chicago, Burlington & Quincy Railroad a ticket over that road. Occasionally he sold to railroad employees, who already had tickets over intermediate lines, orders for reduced rates over the defendant's lines. In some cases, for the convenience of shippers who had received bills of lading from the initial line for goods routed over the defendant's lines, he gave in exchange therefor bills of lading over the defendant's line. In these bills of lading it was recited that they should not be in force until the freight had been actually received by the defendant."

The summons was served upon Heller.

The facts in *Thurman v. Chicago, M. & St. P. R. Co.*, supra, are very similar to the facts in the *Green* case. As quoted in the *Thurman* case, the statute of Massachusetts authorized the prosecution of an action against a foreign corporation *soliciting* business in that commonwealth. A similar provision in a statute of Minnesota was held obnoxious to the commerce clause of the Constitution, in *Davis v. Farmers Co-op. Eq. Co.*, supra. The clause was discussed by the Massachusetts court, but no pronouncement was made as to its validity.

The Supreme Court of the United States, in *International*

*Harv. Co. v. Commonwealth of Kentucky*, 234 U. S. 579 (58 L. Ed. 1479), in which the *Green* case is referred to with some apparent disapproval, dealt with facts somewhat similar to the facts in the case before us. In the *International Harv. Co.* case, the authority and instructions to agents were in writing, and are copied in full in the opinion. The authority of such agents was limited to taking orders, which were required to be first submitted to and approved by the Harvester Company. The agents were likewise prohibited from making contracts or settlements, and from engaging in other transactions not specifically authorized. The agents were permitted to receive cash, checks, drafts, and notes, of course, in payment of sums due upon orders previously approved and filled by the company. All deliveries were made F. O. B. at some point outside of Kentucky. The business conducted in the manner indicated in the state of Kentucky covered a considerable period of time. Orders and deliveries were numerous, and a regular systematic course of business was conducted. Sustaining the jurisdiction of the lower court, the Supreme Court said:

"Upon this question the case is a close one; but upon the whole, we agree with the conclusion reached by the court of appeals, that the Harvester Company was engaged in carrying on business in Kentucky. We place no stress upon the fact that the Harvester Company had previously been engaged in doing business in Kentucky, and had withdrawn from that state for reasons of its own. Its motives cannot affect the legal questions here involved. In order to hold it responsible under the process of the state court, it must appear that it was carrying on business within the state at the time of the attempted service. As we have said, we think it was. *Here was a continuous course of business in the solicitation of orders which were sent to another state, and in response to which the machines of the Harvester Company were delivered within the state of Kentucky. This was a course of business,—not a single transaction.* The agents not only solicited such orders in Kentucky, but might there receive payment in money, checks, or drafts. They might take notes of customers, which notes were made payable, and doubtless were collected, at any bank in Kentucky. This course of conduct of authorized agents within the state, in our judgment, constituted a doing of business there in such wise that the Har-

vester Company might be fairly said to have been there, doing business, and amenable to the process of the courts of the state."

We desire at this point to direct particular attention to the portion of the court's own language printed in italic. The continuous course of business referred to was *the solicitation of orders,* which were sent to another state, and in response to which the machines of the Harvester Company were delivered within the state of Kentucky. The court said, "This was a course of business,—not a single transaction." It is true that the above language is followed by a reference to the fact that the agents were authorized to receive notes, drafts, checks, money, etc., and transmit the same to the Harvester Company. Such transactions were, however, merely formal acts, and involved the exercise of no discretion on the part of the agent, and were always referable to transactions closed by the approval of the order, and, no doubt, generally by the delivery of the machines. These transactions are not given significance in what the court terms a continuous course of business.

The present chief justice of the New York Court of Appeals, in an able opinion in *Tauza v. Susquehanna Coal Co.,* 220 N. Y. 259 (115 N. E. 915), refers to and quotes the identical language from the opinion of Justice Day in the *International Harvester Co.* case. The writer of the opinion in the New York case points out the difference in the facts in the *International Harvester Co.* and *Green* cases, and distinguishes them by saying that in the latter case the orders taken did not result in a continuous course of shipments from Illinois to Pennsylvania, the states referred to in the opinion.

Do not the solicitation of orders by Killingsworth from dealers within the territory set apart to him, the establishment of more or less permanent relationship between petitioner and its customers in Iowa, the delivery and shipment of large consignments of roofing materials to both small and large dealers in Killingsworth's territory, covering a period of five years, the furnishing to him of an automobile, registered in the name of petitioner, and all expenses incident to the operation thereof paid thereby, establish a continuous and systematic course of business, within the doctrine of *International Harv. Co. v. Commonwealth of Kentucky,* supra? The fact that the voluntary activities of Killingsworth in procuring customers for the pur-

chase of material from local retail dealers were tacitly acquiesced in by the petitioner, is not without significance. Its purpose was to increase the sale of products to customers within his territory. It may be conceded that the facts in *Tauza v. Susquehanna Coal Co.*, supra, are somewhat stronger than the facts in the case before us. This may also be said of the facts in the *International Harv. Co.* case.

Speaking for the circuit court of appeals of the ninth circuit, District Judge Hawley, in *Denver & R. G. R. Co. v. Roller*, supra, used the following significant language:

"The general drift and tendency of judicial decisions, state and national, is in the direction of placing corporations upon the same plane as natural persons, in regard to the jurisdiction of suits by or against them. The statutes of the different states and of the United States have, as a general rule, been liberally construed for the purpose of sustaining this view, although the decisions of the state courts upon the precise point under discussion are not entirely harmonious. We are of opinion that the decided weight of authority and of reason is in favor of the jurisdiction of the state court over the present action, under the provisions of the statutes of California above cited, and upon the facts disclosed by the record."

The prior decisions of this court throwing light upon the precise question before us for decision are not numerous. However, the following cases are in point: *Bell Jones Co. v. Erie R. Co.*, 168 Iowa 96; *Murphy v. Albany Pecan Dev. Co.*, 169 Iowa 542; *Jones v. Illinois Cent. R. Co.*, 188 Iowa 850; *Dye Prod. Co. v. Davis*, 202 Iowa 1008.

The discussion of the court in *Locke v. Chicago Chronicle Co.*, 107 Iowa 390, reflects to some extent the views of the court upon the question. Without reviewing the discussion of the question by this court in the cited cases, we shall content ourselves with the statement of our conclusion. We recognize that the question is by no means free from difficulty; but it seems to us that the facts disclosed by the record establish that petitioner was, and has been for many years, engaged in a systematic and continuous course of business in the solicitation of orders and the delivery and shipment of merchandise to numerous customers, new and long established, and that such conduct constitutes doing business in this state, within the meaning of that

term as used in Section 11072, and as construed and interpreted by the decisions of the Supreme Court of the United States. If the corporation was doing business in this state, it will hardly be questioned that Killingsworth was a proper person upon whom service might be had. We shall, therefore, forego discussion on this point. It follows that the writ must be, and it is, annulled.—*Writ annulled.*

All the justices concur.