## Commonwealth v. The American Sugar Refining Co. No. 2

*Alton W. Lick*, of *Hause & Lick*, for appellant.

*Frank A. Sinon*, Deputy Attorney General, and *Claude T. Reno*, Attorney General, for Commonwealth.

WOODSIDE, J., November 9, 1942.—This case involves the settlement of appellant's franchise tax for the year 1936.

The American Sugar Refining Company, a foreign corporation, filed a franchise tax return under the

Franchise Tax Act of 1935, calculating its amount of tax at $299.54, and sent a check for the same.

The Department of Revenue settled appellant's tax liability at nothing, and upon review the Board of Finance and Revenue did likewise. The situation is unusual. The taxpayer insists that it is liable under the Franchise Tax Act and insists upon paying the tax. The Commonwealth contends that it is not liable.

Appellant's desire to pay the foreign franchise tax may be explained by the fact that the shares of a corporation liable for the foreign franchise tax are not subject to the personal property tax: State Personal Property Tax Act of June 22, 1935, P. L. 414, sec. 3, 72 PS §3244.

The Commonwealth filed a motion to quash the appeal on the ground that, there being no tax settled against the corporation by the accounting offcers, it may not appeal, but this court, in an opinion written by President Judge Hargest, held that, pursuant to section 1104 of The Fiscal Code of April 9, 1929, P. L. 343, the right to appeal did exist: Commonwealth v. The American Sugar Refining Co., 43 D. & C. 667.

Appellant contends that this opinion holds it was in fact doing business in Pennsylvania during the tax year of 1936. All this court decided at that time was that appellant had the right to appeal from the Board of Finance and Revenue and to have the court determine whether or not it was subject to the foreign franchise tax for the year 1936.

A stipulation dispensing with trial by jury was filed.

Although testimony was taken, all the facts from which we must determine the question were stipulated and we state them in full as our findings.

### Facts

It is agreed by and between Frank A. Sinon, Deputy Attorney General for the Commonwealth of Pennsylvania, and Alton W. Lick, counsel for defendant, that

the following facts are true and correct, and shall be made a part of the record in this case:

That during the year 1936 defendant stored sugar in Pennsylvania at the Consolidated Storage Company warehouse in Pittsburgh, Pa. This sugar was in the Consolidated Storage Company warehouse, which warehouse is a public warehouse, and the title to the sugar was in the name of American Sugar Refining Company. Defendant's sugar could be removed from the warehouse upon the order of its brokers, to wit, Buley, Patterson & Potts and S. A. Davis & Company. These brokers maintained offices of their own and were compensated exclusively by the commissions paid by defendant to them for effecting the sale of the sugar. These brokers were not the exclusive brokers for defendant, but represented other parties also, although they were the representatives of The American Sugar Refining Company for the sale of sugar exclusively. That said brokers maintained their own premises, and The American Sugar Refining Company did not own or rent offices in Pittsburgh. Said brokers actively called on the sugar trade in and about Pittsburgh, and solicited the trade to purchase the products of The American Sugar Refining Company, including those in the warehouse.

The aforesaid sales were effected in the following manner: When the broker negotiated a sale of a certain quantity of sugar, the broker called up the Consolidated Storage Company and notified the storage company that he had sold to a certain purchaser a certain quantity of sugar stored in the Consolidated Storage Company's warehouse, and gave the storage company at that time the number of a written order to permit the withdrawal of the sugar, which order is termed "Delivery from Consignment". The purchaser of the sugar would then send its own drayman to the warehouse and would obtain the sugar so sold by the broker. At that time the storage company would re-

quire the purchaser withdrawing the sugar to sign a receipt for the sugar and also a delivery notice.

During the year 1936 there were separate sales and separate withdrawals amounting to 938 transactions. The aforesaid sales were made either on cash or credit; if the sales were made on cash, the purchase price therefor was given to the broker by way of a certified check or draft to the order of The American Sugar Refining Company, and in a few instances cash, all of which were immediately transmitted to The American Sugar Refining Company, Baltimore, Md. The greater portion, however, of all sales were made on credits approved in advance by The American Sugar Refining Company, Baltimore, Md., a list of the approved credits being in the possession of the broker. In the cases of sales on credit the bills were transmitted from Baltimore, Md., to the customer in Pennsylvania.

The total value of the sales negotiated or effected by the brokers from the warehouse stock situate in Pennsylvania amounted to approximately $147,065.13.

The only office which the company had in the Commonwealth of Pennsylvania was a registered office, which existed in compliance with certain statutory provisions, and which was at 600 Chestnut Street, Philadelphia, Pa.

The company, in schedule 10 of the franchise tax report, assigned wages, and so forth, to Pennsylvania in the amount of $640. This amount represents payments of $320 each to Gordon L. Besch, of Pittsburgh, Pa., and L. R. Kindlin, of Pittsburgh, Pa., for services rendered for the company in Pennsylvania from October 1, 1936, to December 31, 1936. These two men were employed by the company to call on the sugar trade in and around Pittsburgh, Pa., for the purpose of inducing sellers and users of sugar, when purchasing sugar, to buy the products of The American Sugar Refining Company. These men were not authorized to make any actual sales of sugar, all sales being made

through brokers. However, the aforesaid addresses represent the residences of the employes, and these employes were hired and under the supervision of officers of the defendant without the Commonwealth, and the aforenamed parties received their compensation from offices of the defendant without the Commonwealth.

There was no written agreement between the brokers and The American Sugar Refining Company concerning the compensation and transactions above described. All of the sales of warehouse sugar in the warehouse of the Consolidated Storage Company in Pittsburgh made by the brokers were made to persons, firms, or corporations residing in Pennsylvania, and the actual withdrawal of the sugar represented by said sales took place at the warehouse of the Consolidated Storage Company in Pittsburgh. The sugar thus sold was represented by sales to parties who were generally in the class of wholesalers or manufacturers.

During the year 1936 defendant owned the entire capital stock of the Franklin Sugar Refining Company, a corporation of the State of Pennsylvania. For the year 1936 the capital stock tax settlement made against the Franklin Sugar Refining Company showed a tax of $32,674.24, of which the company paid $22,671.54, the balance still being in dispute.

Defendant was issued a certificate of authority to do business in Pennsylvania by the Secretary of the Commonwealth on September 11, 1933, which certificate of authority has not been revoked. The certificate of authority states that the business to be transacted by defendant in Pennsylvania is "The purchase, manufacture, refining, and sale of sugar, molasses, and melada, and all lawful business incidental thereto."

### Discussion

Section 20 of the Act of June 1, 1889, P. L. 420, as amended, 72 PS §1901, provides that any foreign corporation "doing business in and liable to taxation

within this Commonwealth, or having capital or property employed or used in this Commonwealth . . ." shall make a report to the Department of Revenue.

Section 21 of said act, as amended by the Act of May 16, 1935, P. L. 184, 72 PS §1902, provides that every foreign corporation which is required to make a report under section 20 of said act is subject to the foreign franchise tax.

"Doing business in this Commonwealth" and "having property employed or used in this Commonwealth" are equivalent terms: Commonwealth v. Tonopah Mining Co., 12 Dauph. 91, 94 (1909) ; Commonwealth v. American Bell Telephone Co., 129 Pa. 217 (1889) ; Refrigeration Discount Corp. v. Metzger, 10 Fed. Supp. 748 (1935).

If the only business which a foreign corporation is conducting in the Commonwealth of Pennsylvania is that of interstate commerce, the commerce clause of the Federal Constitution would prevent its being subject to the foreign franchise tax: Cheney Brothers Co. et al. v. Massachusetts, 246 U. S. 146 (1918) ; Alpha Portland Cement Co. v. Massachusetts, 268 U. S. 203 (1925) ; Kansas City Structural Steel Co. v. Arkansas, for use, 269 U. S. 148 (1925) ; Western Union Telegraph Co. v. Kansas ex rel., 216 U. S. 1 (1910) ; Pensacola Telegraph Co. v. Western Union Telegraph Co., 96 U. S. 1 (1877) ; International Paper Co. v. Massachusetts, 246 U. S. 135 (1918) ; Hump Hairpin Manufacturing Co. v. Emerson, 258 U. S. 290 (1922) ; Commonwealth v. Columbia Gas & Electric Corp., 47 Dauph. 133, 150 (1939).

The question is whether the appellant was doing such business in Pennsylvania or had such capital or property employed therein as would make it subject to the tax.

What constitutes doing business in a State has been considered in innumerable cases, many of which deal with the service of process within the State on a for-

eign corporation while others deal with the right of States to tax foreign corporations.

Although decisions relating to taxing, licensing, or State laws that impede the free flow of interstate commerce do not control the question of service of process: Shambe v. Delaware & Hudson R. R. Co., 288 Pa. 240 (1927); nevertheless cases relating to service of process are helpful in determining whether a foreign corporation is in fact doing business in the State.

Appellant was registered to do business in Pennsylvania, but mere registration would not make it subject to the tax: Shambe v. Delaware & Hudson R. R. Co., supra; Callery's Appeal, 272 Pa. 255 (1922).

That appellant owned all the stock of a domestic corporation (unless the foreign corporation was intentionally formed for the express purpose of holding the stock of the domestic corporation which is not here claimed by the appellant) does not constitute doing business in this Commonwealth: Callery's Appeal, supra; Commonwealth v. Wilkes-Barre & Hazleton R. R. Co., 251 Pa. 6 (1915); Commonwealth v. Lycoming Improvement Co., 6 Dauph. 103 (1903).

The Commonwealth contends that the facts in International Fuel Service Corp. v. Stearns, 304 Pa. 157 (1931), and Commonwealth v. Johnson & Johnson, 23 Dauph. 270 (1920), are sufficiently similar to make those decisions controlling here.

There are important distinctions. In the International Fuel Service Corporation case plaintiff was a Connecticut corporation engaged as a wholesale dealer in a fuel-saving electrical device. The corporation entered into an agreement with W. I. Stearns of Philadelphia, giving the latter exclusive right to sell the devices in Pennsylvania and certain other States. The agreement provided for a consignment of blowers from time to time by the corporation to defendant and set out in detail the prices at which the blowers and the

various accessories were to be furnished. Title to the blowers was to remain in the corporation to secure payment. The contract provided a minimum of sales that defendant was required to make each of the five, years, and the corporation agreed to keep defendant supplied with sufficient blowers to meet the requirements of two months' business. Defendant, under the contract, received and sold the blowers on his own account as a jobber and not as agent for plaintiff, who in fact had no office, place of business, or agency in Pennsylvania, and had no voice in the sale of the goods by defendant. Plaintiff had no other business in the State.

In holding that the corporation was doing business in Pennsylvania, the court, quoting Hovey's Estate, 198 Pa. 385 (1901), said (p. 163):

"A foreign corporation [which] forwards merchandise to a commission merchant in Pennsylvania to be sold by him is not doing business in this State . . ."

The court, however, pointed out that the corporation paid defendant "neither salary, commissions or expenses so he was not their agent. The business done here was done by him and not by the plaintiff through him."

In the case before us the sugar was not sent from without the State to the brokers. In the stipulation we find that defendant stored sugar in Pennsylvania at a public warehouse, and the title to the sugar was in the name of The American Sugar Refining Company. The corporation's sugar could be removed from the warehouse upon orders from its brokers, who were compensated exclusively by the commissions paid by defendant to them for the sale of the sugar.

We think the fact that the corporation's sugar was sold from a public warehouse in Pennsylvania distinguishes this case from one in which a foreign corporation forwards merchandise to a commission merchant in Pennsylvania to be sold by the commission merchant.

In Commonwealth v. Johnson & Johnson, supra, the facts were that a corporation organized under the laws of New Jersey employed agents in Pennsylvania to solicit, receive, and forward orders, but not to fill them directly. All orders were filled from the place of manufacture in New Jersey.

In a warehouse in Pennsylvania the corporation stored a considerable amount of cotton purchased in the South and kept it there until it was needed at the plant in New Jersey. No part of this cotton was used in manufacturing in Pennsylvania, nor was any portion of it sold. The court held that the corporation was not doing business in Pennsylvania, and refused to adopt the suggestion of the Commonwealth that the storage of the cotton in this State, along with the solicitation of orders, constituted the employment of capital in Pennsylvania.

Judge Sadler, specially presiding in this court, said in that case (p. 272) :

"In the present case the tax is not upon personal property, but we are asked to hold that the possession of the raw material in the warehouse, considered in connection with the evidence that agents solicited orders for the finished product within the state, constitutes the employment of capital here. *If the goods in storage were used to fill orders in carrying out the corporate business of the appellant company, the position might be well taken.*" (Italics supplied.)

In the case before us the goods in storage were used to fill orders in carrying out the corporate business.

There is nothing in the facts of the case before us to indicate the source of the sugar stored in the warehouse. Assuming, however, it was shipped there directly from the corporation's refining plant outside of the Commonwealth, the facts would still be more similar to the case of Loughry Brothers Milling & Grain Co. v. Bell, 28 Dist. R. 13 (1918), than to any cited by the Commonwealth. In that case the company was

engaged in the business of manufacturing and selling flour and other similar products. It was an Indiana corporation and sold its flour through a grain broker in Pittsburgh. In all cases of sales in carload lots the broker forwarded the orders to the plaintiff corporation, from which place the goods were shipped by railroad to its customers, who made payment for them directly to the corporation. In addition to this, however, they had a considerable amount of goods sent to their own order in a warehouse owned by a third party in Pittsburgh. There they stored the goods to supply customers for less than carload lots. They paid storage fees to the warehouse, as well as drayage fees in transporting the goods to and from the warehouse. The broker in making the sales, without communicating in any way with the corporation, turned over the contracts to the warehouseman who filled them from the goods of the corporation in his warehouse. The court concluded that the plaintiff corporation was doing business in this Commonwealth.

In Cheney Brothers Co. et al. v. Massachusetts, supra, the United States Supreme Court passed upon the liability of seven foreign corporations from which that Commonwealth was attempting to collect a tax on foreign corporations for the privilege of doing business within the State. The corporation whose method of business within Massachusetts was most similar to that of the appellant in this case was the Lanston Monotype Company, which was held to be doing a local business and subject to the tax.

In Kansas City Structural Steel Co. v. Arkansas, for use, supra, in holding that a foreign corporation which constructed a bridge within a State was engaged in intrastate business, the Supreme Court of the United States said the following (p. 152):

"The fact that the materials had moved from Missouri into Arkansas did not make the delivery of them to the subcontractor interstate commerce. So far as

concerns the question here involved, the situation is the equivalent of what it would have been if the materials had been shipped into the State and held for sale in a warehouse, and had been furnished to the subcontractor by a dealer. We think it plain that the plaintiff in error did business of a local and intrastate character in Arkansas before it obtained permission."

See also Commonwealth v. Gandy Belting Co., 12 Dauph. 182 (1909), West Jersey Ice Manufacturing Co. v. Armour et al., etc., 12 Pa. Superior Ct. 443 (1899), Kraus v. American Tobacco Co. et al., 284 Pa. 569 (1925), and The Milsom Rendering & Fertilizer Co. v. Kelly, 10 Pa. Superior Ct. 565 (1899).

### Conclusions of law

1. Appellant is a foreign corporation which, during the year 1936, was engaged in business within the Commonwealth of Pennsylvania.

2. Appellant was liable for a franchise tax for the year 1936 in the sum of $299.54, and the taxing officers of the Commonwealth improperly settled the tax at nothing.

### Statement

Appellant paid the correct amount of franchise tax due for the year 1936 at the time of filing the franchise tax report. As the Commonwealth contended there was no tax due, appellant is not liable for any Attorney General's commission. Although we find that the appellant is liable for the tax we are finding in its favor.

### Order

And now, November 9, 1942, the appeal is sustained and judgment is hereby entered for defendant unless exceptions be filed within the time limit prescribed by law.